OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Marco Henderson, filed October 23, 2006. On June 25, 2004, a Montgomery County Grand Jury indicted Henderson on one count of felonious assault (deadly weapon), with a firearm specification. On *Page 2 
July 21, 2004, Henderson was re-indicted for felonious assault (deadly weapon) with a firearm specification, felonious assault (serious physical harm), with a firearm specification, having weapons while under disability (prior), and having weapons while under disability (fugitive from justice). The "A" indictment was nolled. On August 20, 2004, charges were added to the "B" indictment as follows: one count of felonious assault (deadly weapon), with a firearm specification, felonious assault (serious physical harm), with a firearm specification, and having weapons while under disability. The victim herein is Kenneth Scott. On November 3, 2005, Henderson pled not guilty. On July 25, 2006, after a trial to a jury, Henderson was found guilty of felonious assault (deadly weapon), with a firearm specification, and felonious assault (serious physical harm), with a firearm specification.
 {¶ 2} The events giving rise to this matter began on April 24, 2004, when Kenneth, his brother, Darryl Scott, and their cousin, Mark Meritt, arrived at the home Kenneth shared with Kimberly Frost. Kenneth found a short man [Henderson] and a tall man, neither of whom Kenneth knew, there, along with Kimberly's brother, another woman, Kimberly's five children and Kenneth's daughter. Darryl instructed Henderson and the tall man to leave, and an argument ensued between the three men. The men exited the home to the porch, and they were followed by Darryl and Mark. The tall man left the porch to urinate beside the house and then returned to the porch and threw a punch at Kenneth. Henderson walked to his nearby car, returned to the porch, and shot Kenneth while Kenneth and Henderson were fighting.
 {¶ 3} On August 7, 2006, Henderson filed a Motion for New Trial. According to Henderson, "new evidence in the form of an Affidavit of Damian Miller [the tall man] has been taken where Damian Miller confesses to the shooting of Kenneth Scott on or about April 24, *Page 3 
2004." On August 18, 2006, Henderson filed a Supplement to Motion for New Trial, attached to which is the Affidavit of Kimberly Frost. At trial, Kimberly identified Henderson as the individual who shot Scott, and according to her Affidavit, she "offered the false testimony concerning [her] identification of Marco Henderson based upon information [she] had received from third-parties and not based upon [her] actual observations." On August 24, 2006, the State opposed Henderson's Motion.
 {¶ 4} On August 31, 2006, the trial court issued a Decision Entry Overruling Defendant's Motion for New Trial. The court determined that "the evidence supporting Defendant's motion, and upon which Defendant's motion is sought, is contained in the affidavits attached to the motion, and therefor a hearing on this matter is not warranted." The court further concluded, "[a]fter a careful review of the evidence submitted, and based on the testimony of other witnesses presented by the State at trial, * * * that neither Damian Miller's admission nor Kimberly Frost's recantation present a strong probability that the outcome of this case would differ if a new trial was ordered." Finally, the court determined, "the proferred evidence would merely contradict other evidence presented in the state's case in chief and, particularly in the case of the Frost affidavit, would itself be subject to impeachment based on previous sworn testimony."
 {¶ 5} On September 7, 2006, Henderson filed a "Response to State's Memorandum in Opposition to Defendant's Motion for a New Trial and Mr. Henderson's Request for Reconsideration," arguing that the trial court indicated in open court that Henderson "would have an opportunity to respond [to the State's Memorandum] prior to the next court appearance two weeks later," but that the court filed its Entry overruling Henderson's Motion before *Page 4 
Henderson could respond to the State's Memorandum in Opposition. Henderson asked the court to reconsider its earlier ruling and grant Henderson a new trial, "or at the minimum, a hearing on this matter."
 {¶ 6} On September 21, 2006, the trial court held a hearing on Henderson's Motion for New Trial. Kimberly testified regarding her recantation, and counsel for Henderson testified regarding the authenticity of Miller's Affidavit. Miller's and Frost's affidavits were admitted into evidence.
 {¶ 7} On September 27, 2006, the trial court issued a "Decision and Entry Overruling Defendant's Motion for New Trial." As to Miller, the trial court determined that Henderson knew Miller "in as much as they both arrived at the scene of the crime together and they were seen leaving together and driving away from the scene of the crime together." The court also determined that there was no evidence that Henderson was not at the scene of the crime "such that he would be unable to know or identify" Miller as the shooter. The record is further devoid of any evidence indicating that [Henderson] at any time in his own defense identified [Miller] as the shooter, or called any other witness to this effect." Finally, the court determined that "Miller was not identified as a witness for trial" by Henderson.
 {¶ 8} As to Kimberly, the court determined that "her evidence at trial was merely cumulative to other evidence at trial and is not exculpatory of [Henderson's] guilt. It simply indicates that she was not an eyewitness to the shooting, contrary to what she had indicated at trial. That is, she did not identify that the victim was shot by someone other than [Henderson]. As such, this evidence does not disclose a strong probability that it — her not having seen the shooting — will change the result if a new trial is granted." *Page 5 
 {¶ 9} The trial court sentenced Henderson to six years on each count of felonious assault, to be served concurrently, and the court merged the two firearm specifications into one firearm specification to be served consecutively and prior to the definite term of imprisonment, for a total sentence of nine years.
 {¶ 10} Henderson asserts two assignments of error. Henderson's first assignment of error is as follows:
 {¶ 11} "THE VERDICT AGAINST THE DEFENDANT-APPELLANT WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE."
 {¶ 12} "In reviewing a claim of insufficient evidence,[t] he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. McKnight, 107 Ohio St.3d 101, 112, 837 N.E.2d 315,2005-Ohio-6046 (Internal citations omitted).
 {¶ 13} The following witnesses testified for the State: Darryl, Kimberly, Kenneth, Mark, Don Zwiesler, a City of Dayton police officer, and Craig Stiver, an evidence technician for the Dayton police department. Darryl stated that he and Mark followed Kenneth, the tall man and Henderson onto the porch from the house. According to Darryl, the tall man left the porch and urinated in bushes on the side of the house, and Henderson went "out to a white car" and then returned. The tall man and Kenneth got into a fist fight on the porch, and Darryl saw Henderson shoot Kenneth with a revolver while the tall man and Kenneth were fighting. When asked what part of the gun he observed, Darryl stated that he saw the "rear end of it. I guess it's a stock. * * * The butt part of it." *Page 6 
 {¶ 14} Kimberly testified that she walked onto the porch when she heard the men arguing. She saw Damian throw a punch at Kenneth, and the men begin fighting. Then, Kimberly stated, "I seen the gun in Marco's hand and he was just shooting at [Kenneth]. * * * I seen fire coming from [Henderson's] hand. That's all I could see. I didn't see the gun. I seen fire coming from his hand. Every time that gun went off, I seen it."
 {¶ 15} Kenneth testified, "The tall guy finished using the restroom. He came back on my steps and he started arguing some more. So we started arguing. He kept trying to walk towards me, and I was at the end of my porch, he's on my steps, and I remember he swung at me and I kind of swayed my head a little bit, and Kimberly was standing between us. * * * and I remember we started fighting. * * * Next thing I know, I was shot." Kenneth could not identify who shot him.
 {¶ 16} Mark testified on direct that he walked to the porch steps and turned around, still on the porch, and with his back to the street and the steps, he observed the tall man and Kenneth fighting and tried to break up the fight. He stated that shots then came from behind Mark, striking Kenneth. According to Mark, the tall man did not have a gun, and Mark stated that he did not see who shot Kenneth. Mark's written statement to police provided, "And they got to fighting and one guy came on the porch and shot Rick."
 {¶ 17} Officer Zweisler responded to the scene of the shooting and described Kenneth's condition for the court. Officer Stiver testified that he retrieved two bullet casings from the porch and one from a grassy area by the porch, and that they were ejected from a semi-automatic handgun and not a revolver.
 {¶ 18} Having reviewed the evidence in a light most favorable to the State, we conclude *Page 7 
that Henderson's conviction is supported by sufficient evidence. While Henderson argues that the "record is devoid of any testimony that [Henderson] was in possession of an automatic weapon or that he took the time to unload his gun of empty shells after firing shots," we agree with the State that "Darryl Scott only saw the handle of the gun when Henderson drew it from his pocket, so Officer Stiver's opinion that the gun was a semi-automatic hand gun, rather than a revolver, is irrelevant to Darryl's credibility." Kimberly's testimony was clear, whether she actually saw the gun or not, that the gunfire came from Henderson. Each of the witnesses present at the time of the shooting stated that the tall man was in a fist fight with Kenneth when Kenneth was shot, and none of them reported seeing the tall man, or any one else but Henderson, with a gun.
 {¶ 19} The State argues that Mark's written statement to police "suggests that the person * * * responsible for the shooting was on the porch with Kenneth," and that Mark's written statement is in conflict with his trial testimony that he did not see the shooter. While being cross-examined, however, about his written statement, Mark stated Mark was "there in between [the tall man and Kenneth] trying to get them to stop fighting each other, so I know the tall guy didn't do no shooting." Mark further stated, "Whoever wasn't on the porch did the shooting; and the guy that I seen fighting, it had to be another guy. * * * But the other guy, when I said a guy came on the porch and shoot beside him, I was in the mix of breaking it up. I should have said other guy came on the porch and shot, but I said a guy came on the porch and shot because I was in the mix of trying to break that up." A rational juror could conclude, from Mark's testimony on cross, that Mark's written statement indicates that "They [Kenneth and the tall man] got to fighting and [Henderson] came on the porch and shot [Kenneth]," a version of *Page 8 
events consistent with Mark's testimony on direct that the shots came from behind Mark.
 {¶ 20} Given the evidence before them, any rational juror could have found, as to Henderson, the essential elements of felonious assault (deadly weapon) and felonious assault (serious physical harm) proven beyond a reasonable doubt. O.R.C. 2903.11(A)(2); O.R.C. 2903.11(A)(1). Henderson's first assignment of error is overruled.
 {¶ 21} Henderson's second assignment of error is as follows:
 {¶ 22} "THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION FOR A NEW TRIAL."
 {¶ 23} Crim.R. 33(A) states in pertinent part:
 {¶ 24} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 25} * * *
 {¶ 26} "(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *"
 {¶ 27} "A motion for new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (Internal citation omitted). `The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Internal citation omitted). State v.Greenwood, Montgomery App. No. 21713, 2007-Ohio-4202. "To warrant the granting of a new trial, the new evidence must, at the very least, disclose `a strong probability that it will change the result if a new trial is granted,' and must not be `merely cumulative to former evidence.'" State v. Pierce, Montgomery App. No. 21561, 2007-Ohio- *Page 9 
1749.
 {¶ 28} After a thorough review of the record and the parties' arguments, we conclude that the trial court did not abuse its discretion when it overruled Henderson's motion for new trial. First, as to Kimberly, should she testify, the State could easily impeach her recantation with her trial testimony. Further, her trial testimony is cumulative of and consistent with Darryl's and Mark's. Even if the jury believed her recantation, a strong probability does not exist that her new testimony would alter the result if a new trial were granted; Kimberly does not identify a shooter in her recantation but merely says she did not see who shot Kenneth.
 {¶ 29} Second, as to Damian's confession, Kimberly, Darryl and Mark's testimony was consistent that Kenneth and Damian were locked in a physical struggle at the time Kenneth was shot. No one observed Damian with a gun; only Henderson was armed. Henderson obviously knew Damian's identity, having arrived and left Kenneth's home with him, but Henderson did not subpoena Damian as a witness nor assert that Damian was the shooter. In other words, Henderson has failed to establish that with due diligence he could not have discovered and produced at trial evidence of Damian's alleged guilt. There being no abuse of discretion, Henderson's second assignment of error is overruled. Judgment affirmed.
 WOLFF, P.J. and FAIN, J., concur. *Page 1