OPINION
{¶ 1} Derrick Vinzant appeals from a judgment of the Montgomery County Court of *Page 2 
Common Pleas, which denied his motion for a new trial. For the following reasons, the trial court's judgment will be affirmed.
 {¶ 2} In September 2000, Vinzant was convicted by a jury of voluntary manslaughter with a firearm specification, aggravated assault (deadly weapon) with a firearm specification, and having weapons while under disability. The charges stemmed from an encounter between Vinzant, Douglas Vinzant (Vinzant's father), Todd Ivory, and Eric Bailey during which Vinzant ultimately shot at Ivory and Bailey, killing Ivory and wounding Bailey. In convicting Vinzant, the jury rejected Vinzant's assertion that he had acted in self-defense. Vinzant received an aggregate sentence of twelve years in prison.
 {¶ 3} On direct appeal, we affirmed Vinzant's conviction. State v.Vinzant, Montgomery App. No. 18546, 2001-Ohio-7005 ("Vinzant I
"). Vinzant subsequently filed a petition for post-conviction relief, which the trial court denied. We also affirmed the denial of that petition. State v. Vinzant, Montgomery App. No. 19295, 2003-Ohio-2522("Vinzant II ").
 {¶ 4} In February 2005, Vinzant filed a motion for a new trial based on newly discovered evidence. At a hearing on the motion, Vinzant presented the testimony of Dr. William Lewinsky, a proposed expert on the biomechanics of deadly force encounters. After hearing the testimony, the trial court denied Vinzant's motion for a new trial.
 {¶ 5} In his sole assignment of error, Vinzant claims that the trial court erred in denying his motion for a new trial.
 {¶ 6} Under Crim. R. 33(A)(6), a trial court may grant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." We review the trial court's denial of a *Page 3 
motion for a new trial for an abuse of discretion. State v.Henderson, Montgomery App. No. 21865, 2007-Ohio-5982, at ¶ 27.
 {¶ 7} "Before a new trial can be granted upon the basis of newly discovered evidence, the defendant must show that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. McCaleb, Greene App. No. 05 CA 155, 2006-Ohio-4652, at ¶ 24, citing Dayton v. Martin (1987),43 Ohio App.3d 87, 539 N.E.2d 646; State v. Petro (1947), 148 Ohio St. 505,76 N.E.2d 370.
 {¶ 8} The trial court found that Dr. Lewinsky's testimony was discovered after Vinzant' s trial and could not have been discovered before the trial. The court further found that the evidence was not merely cumulative or merely contradicted former evidence. The trial court concluded, however, that the evidence was not material and did not disclose a strong probability that it would change the result at a second trial. The court reasoned:
 {¶ 9} "Vinzant had a means of escape and violated his duty to retreat. Dr. Lewinsky's testimony does not speak to Vinzant's ability to retreat, only to whether Mr. Ivory was possibly coming at Mr. Vinzant once Mr. Vinzant had obtained the gun out of the van. Although Dr. Lewinsky's testimony may be relevant and may have been admissible at trial, it does not, when considered in the light of all the testimony and evidence, establish by clear and convincing evidence a strong probability that a different result would be reached at a second trial, nor would it have enabled the defendant significantly to alter the quantum of proof in his favor." *Page 4 
 {¶ 10} On appeal, Vinzant asserts that Dr. Lewinsky's testimony was material and supports his assertion that he acted in self-defense. Vinzant claims that Dr. Lewinsky's testimony bolstered his (Vinzant's) testimony at trial that Ivory had been running toward him and refutes the conclusion that Vinzant violated his duty to retreat.
 {¶ 11} As we stated in Vinzant's direct appeal, the defense of self-defense consists of the following elements: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. Vinzant I, supra, citing State v.Palmer, 80 Ohio St.3d 543, 563, 1997-Ohio-312, 687 N.E.2d 685; seeState v. Crawford, Montgomery App. No. 22314, 2008-Ohio-4008, at ¶ 38-40. The only exception to the duty to retreat before using deadly force is if an individual is in his home at the time of the confrontation. Vinzant, supra.
 {¶ 12} In rejecting Vinzant's assertion that the jury's verdict was against the manifest weight of the evidence, we concluded that Vinzant had violated his duty to retreat. We stated:
 {¶ 13} "In the present case, the evidence demonstrated that [Vinzant] did not cause the confrontation between he and [Bailey] and [Ivory] on July 20, 1999. We also believe [Vinzant] had a bona fide belief that he was in imminent danger of bodily harm while [Bailey] and [Ivory] were beating him. However, the majority of the evidence indicated that [Vinzant] was not in imminent danger at the time he began firing the gun, because the individuals had dispersed. Although [Vinzant] testified that [Ivory] exited the barber shop and ran directly at him, all other testimony indicated [Ivory] headed straight for the Pontiac when he left the barber shop. In any *Page 5 
event, Derrick had ample time to escape when he ran to his van. Instead of escaping, he searched for the gun and began firing." Vinzant I, supra.
 {¶ 14} Dr. Lewinsky's testimony supported Vinzant's assertion that he was in imminent danger of bodily harm from Ivory. In short, Dr. Lewinsky testified that the location of Ivory's gunshot wounds — on Ivory's back and side — was consistent with Ivory turning away from Vinzant as Vinzant pulled the trigger. Thus, Dr. Lewinsky's testimony indicates that it was possible that Ivory was running toward Vinzant, as Vinzant testified. Dr. Lewinsky's testimony, however, can be reconciled with "all other testimony [that] indicated [Ivory] headed straight for the Pontiac when he left the barbershop." Furthermore, Dr. Lewinsky's testimony did not address whether Vinzant should have retreated rather than retrieve a gun from his vehicle. Because the evidence at trial indicated that Vinzant had a duty to retreat and that Vinzant violated that duty, and because Dr. Lewinsky's testimony did not dispel the State's position that Vinzant did not shoot Ivory in self-defense, we find no reasonable probability that Dr. Lewinsky's testimony would change the outcome at a new trial.
 {¶ 15} In his reply brief, Vinzant assets that he could not reasonably retreat because several of his family members would have been left with Ivory and Bailey. Vinzant cites to his trial testimony where he indicated that his "family was out there and I felt threatened." Vinzant next testified that he "didn't feel like [leaving in the van] was a choice." Vinzant's duty to retreat under "defense of another" was a matter to be addressed on direct appeal. Vinzant may not now argue for the first time that he had no duty to retreat because his father would have remained at the scene.
 {¶ 16} The assignment of error is overruled. *Page 6 
 {¶ 17} The judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1