OPINION
{¶ 1} George Skatzes appeals from two judgments of the Montgomery County Court of Common Pleas, which denied his petition for postconviction relief (CA 22322) and overruled his motion for a new trial (CA 22484). These appeals have been consolidated on appeal. For the following reasons, the judgments of the trial court will be affirmed. *Page 2 
 I {¶ 2} In 1995, George Skatzes was found guilty of three counts of aggravated murder arising out of an eleven-day inmate riot and siege at the Southern Ohio Correctional Facility in Lucasville. The riot occurred in April 1993. Skatzes was convicted of killing two other inmates, Earl Elder and David Sommers, and a corrections officer, Robert Vallandingham. He was sentenced to death for Elder's and Sommers' murders and to life imprisonment for Vallandingham's murder. Skatzes was also found guilty of three counts of kidnapping, for which he received three concurrent sentences of fifteen to twenty-five years.
 {¶ 3} Skatzes appealed from his conviction and sentence. In 2003, we affirmed his conviction on the three aggravated murders and two of the kidnappings, and we affirmed the imposition of the death penalty. We vacated Skatzes' conviction on the third kidnapping. State v.Skatzes, Montgomery App. No. 15848, 2003-Ohio-516.
 {¶ 4} While an appeal to the Supreme Court of Ohio was pending, Skatzes filed a petition for postconviction relief. In 2004, the supreme court affirmed his conviction and sentence. State v. Skatzes,104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215. In January 2007, Skatzes filed a motion for new trial based on new evidence. In July 2007, the trial court denied Skatzes' petition for postconviction relief without a hearing. In October 2007, the trial court overruled Skatzes' motion for a new trial.
 II {¶ 5} Skatzes raises twelve assignments of error on appeal from the denial of his petition for postconviction relief and three assignments on appeal from the denial of his motion for a new trial. We begin with a brief discussion of the standard of review for postconviction relief and the *Page 3 
assignments related to the petition for postconviction relief.
 {¶ 6} Generally, nonjurisdictional errors that could have been raised on direct appeal are not cognizable in postconviction proceedings. In other words, the petitioner must be seeking something other than a standard review of alleged trial court errors. See State v. Silsby,— Ohio St.3d -, 2008-Ohio-3834, — N.E.2d -, ¶ 16. "Postconviction review is a narrow remedy, since res judicata bars any claim that was or could have been raised at trial or on direct appeal." State v. Steffen,70 Ohio St.3d 399, 410, 1994-Ohio-111, 639 N.E.2d 67.
 {¶ 7} When a petition for postconviction relief claims that trial counsel was ineffective, "[b]efore a hearing is granted, the petitioner bears the initial burden * * * to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness."State v. Jackson (1980), 64 Ohio St.2d 107, 111, 413 N.E.2d 819;State v. Norton (Aug. 6, 1999), Greene App. No. 99-CA-23. We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id.
 III {¶ 8} Skatzes' first assignment on appeal from the denial of his petition for *Page 4 
postconviction relief states:
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT DECLINED TO CONSIDER PETITIONER'S CLAIMS OF ACTUAL INNOCENCE UNDER APPLICABLE U.S. SUPREME COURT STANDARDS."
 {¶ 10} Skatzes contends that the trial court should have reviewed his claims of "actual innocence" under the standard prescribed in Schlup v.Delo (1995), 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808, and House v.Bell (2006), 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1. These cases held that "prisoners asserting innocence as a gateway to defaulted claims" must establish that, in light of new evidence presented by the petitioner, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House,547 U.S. at 536-537, citing Schlup, 513 U.S. at 327. In this way, the Supreme Court provides "a meaningful avenue by which to avoid a manifest injustice" in "extraordinary" cases, while respecting societal interests in finality, comity, and conservation of scarce judicial resources. Id.
 {¶ 11} Skatzes claims that Schlup and House permit the review of claims under a petition for postconviction relief that would otherwise be procedurally barred, noting that the execution of an innocent person would violate the Eighth Amendment to the United States Constitution. The trial court rejected Skatzes' argument, concluding that his claims were not "extraordinary" because they could be reviewed under the postconviction standard for ineffective assistance of counsel and the withholding of exculpatory evidence.
 {¶ 12} The trial court properly concluded that Schlup andHouse did not affect the standard for reviewing a petition for postconviction relief. Skatzes sought relief under Ohio law, where postconviction relief is governed by statute. See R.C. Chap. 2953. A petitioner *Page 5 
receives no more rights than those granted by statute. State v.Calhoun, 86 Ohio St.3d 279, 281, 1999-Ohio-102, 714 N.E.2d 905.Schlup and House rely on the federal law of habeas corpus, which is inapplicable to proceedings created under state law. Moreover, Ohio courts have not adopted the United States Supreme Court's approach that the equitable nature of habeas corpus precludes application of strict rules of res judicata. State v. Keenan, Cuyahoga App. No. 87713,2006-Ohio-6031, at ¶ 12. Thus, Skatzes' claims of actual innocence have no bearing on whether his arguments are barred by res judicata.
 {¶ 13} Skatzes' first assignment of error is overruled.
 IV {¶ 14} Skatzes' second assignment of error states:
 {¶ 15} "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S FOURTH AND SIXTH GROUNDS FOR RELIEF, THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PRESENT EVIDENCE THAT INMATE ERIC GIRDY MURDERED EARL ELDER AND FOR FAILING TO INVESTIGATE AND CALL INMATES MICHAEL TROCODARO AND THOMAS ANTHONY TAYLOR AS EXCULPATORY WITNESSES."
 {¶ 16} Skatzes claims that he was denied the effective assistance of counsel because his attorneys did not investigate and present evidence that another inmate, Eric Girdy, had murdered Earl Elder or had witnessed Elder's murder and did not call inmates Michael Trocodaro and Thomas Anthony Taylor as exculpatory witnesses.
 {¶ 17} As the state points out, Skatzes did not argue in his petition that his attorneys should have called Girdy as a witness to Elder's murder. He argued only that counsel did not adequately pursue and present evidence that Girdy had actually committed the murder. *Page 6 
Because it was not raised in the trial court, Skatzes has waived the former argument.
 {¶ 18} The state presented evidence at trial that Elder had been attacked three times in the early hours of the riot: once in the stairwell to which he fled with one of the guards as the riot began and twice hours later in cell L-6-60. In all, Elder received 163 stab wounds, as well as many other injuries, in these attacks, and numerous inmates were involved. Skatzes was implicated in the second attack, and Girdy seems to have been implicated in the third attack. Many of Elder's stab wounds were superficial, but several caused injuries that could have been fatal. During Elder's autopsy, glass was found in one of his more serious wounds.
 {¶ 19} In support of his argument that counsel was ineffective in failing to discover and present evidence that Girdy had killed Elder, Skatzes relied on evidence that included an affidavit from attorney Alice Lynd, who assisted counsel in representing Skatzes in the postconviction proceedings; the coroner's autopsy of Earl Elder; and affidavits from defense counsel, attached to which was a copy of Girdy's indictment for the aggravated murder of Earl Elder.
 {¶ 20} According to Lynd, Girdy admitted to her that he had killed Elder by stabbing him with a piece of glass. Skatzes claims that this exculpatory evidence, coupled with the autopsy report indicating that glass was found in one of Elder's more serious wounds. would have changed the outcome of his trial. He also claims that Girdy's subsequent indictment for Elder's murder proves that he was prejudiced by counsel's failure to investigate Girdy.
 {¶ 21} The trial court concluded that the evidence presented regarding Girdy did not support postconviction relief based on the ineffective assistance of counsel. We agree. As *Page 7 
the trial court noted, there is nothing in the record to suggest that trial counsel should have known about Girdy's purported involvement at the time of Skatzes' trial. Lynd's interview with Girdy occurred much later, and Skatzes' petition did not point to any reason why counsel should have suspected that an interview with Girdy would be helpful to their case. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and counsel's actions were not objectively unreasonable if there was no basis to suspect Girdy's alleged involvement.
 {¶ 22} Skatzes also asserts that the state's subsequent indictment of Girdy in 2005 for Elder's murder supports his theory that his attorneys were ineffective and contradicts the state's theory in his own case. The trial court properly concluded, however, that Girdy's subsequent indictment did not show that Skatzes had been wrongly convicted or that he had been denied the effective assistance of counsel. The fact that Girdy may have been involved in these attacks, even if he inflicted a potentially fatal blow, does not preclude the conclusion that Skatzes was also culpable for Elder's murder.
 {¶ 23} Moreover, the trial court noted that Lynd's and Girdy's affidavits were inconsistent. In Girdy's affidavit, he stated that, after some other attacks on Elder, inmates Tim Williams, Doc Ellis, and two other men punched Elder and stabbed him with a piece of glass, after which he "became quiet." In other words, Girdy implied that Williams, Ellis, and two other men inflicted the fatal blows. Lynd claims that, in her interview with Girdy, he admitted that he was one of the "other men." These inconsistencies call Girdy's credibility into question and cast doubt on whether Girdy would have been a helpful witness at trial.
 {¶ 24} Skatzes also contends that the trial court erred in failing to hold a hearing on his claims that his counsel was ineffective in failing to call inmates Michael Trocodaro and *Page 8 
Thomas Anthony Taylor to testify on his behalf. Skatzes claims that both men were in a position to witness the events in cell L-6-60, where Elder was killed on the first night of the riot.
 {¶ 25} Trocodaro stated by affidavit that Skatzes did not enter Elder's cell on L-block. He claimed that only Roger Snodgrass had been involved in the first attack in the cell and that inmate Lucky Roper and a few other inmates inflicted the final blows in a later attack. Trocodaro claimed that Skatzes was protecting inmates in L-block, including Elder, rather than harming anyone. These claims contradicted the statements Trocodaro made to Highway Patrol officers shortly after the riot, in which he provided a version of events consistent with the state's evidence at trial. Specifically, in May 1993, Trocodaro had reported seeing Skatzes escorting Snodgrass to Elder's cell and holding the door while Snodgrass stabbed Elder. Skatzes' trial attorney stated by affidavit that he had spoken with Trocodaro before trial, but Trocodaro not did provide information that called into doubt Skatzes' involvement in Elder's murder.
 {¶ 26} Based on Skatzes' evidence with respect to Trocodaro, the trial court properly concluded that ineffective assistance of counsel had not been demonstrated. Because there is no evidence that Trocodaro told a version of events exonerating Skatzes prior to Skatzes' trial, trial counsel's conduct did not fall below an objective standard of reasonableness in failing to call Trocodaro as a witness or to further investigate him. Moreover, considering the starkly inconsistent stories told by Trocodaro in May 1993 and in his affidavit, there is no reasonable probability that Trocodaro's testimony would have been deemed so reliable as to have affected the outcome of the trial.
 {¶ 27} Similarly, Taylor's affidavit asserts that Skatzes did not enter Elder's cell the *Page 9 
day Elder was killed. However, like Trocodaro, Taylor gave statements in the months after the riot that were consistent with the state's evidence at trial that Skatzes and Snodgrass had attacked Elder in cell L-6-60. Because Taylor had made statements prior to trial that incriminated Skatzes, trial counsel's conduct did not fall below an objective standard of reasonableness in failing to further investigate Taylor as a potentially helpful witness.
 {¶ 28} Finally, we address Skatzes' assertion that the trial court was bound to presume that Girdy's, Trocodaro's, and Taylor's affidavits were truthful under the authority of Calhoun, 86 Ohio St.3d at 284. Skatzes implies that the court was unduly skeptical of these affidavits in reviewing his petition for postconviction relief. "However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents. Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." (Citations omitted.) Id. The trial court was confronted with this exact situation. Even if the substance of the affidavits was true, the affidavits did not establish that trial counsel committed errors that affected the outcome of the trial or that counsel's representation fell below an objective standard of reasonableness. Accordingly, Skatzes was not entitled to postconviction relief on these bases.
 {¶ 29} The second assignment of error is overruled.
 V {¶ 30} Skatzes' third assignment of error states:
 {¶ 31} "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S NINTH AND *Page 10 
TENTH GROUNDS FOR RELIEF THAT THE STATE WITHHELD FROM TRIAL COUNSEL IMPEACHING AND EXCULPATORY EVIDENCE REGARDING ELDER'S MURDER."
 {¶ 32} Under the ninth ground for relief in Skatzes' petition, he asserted that the state had withheld evidence — namely, statements made by inmate Tim Williams — which would have exonerated him or allowed him to impeach Williams at trial. Under Skatzes' tenth proffered ground for relief, he claimed that the state failed to provide exculpatory evidence from inmate Jack Spurlock's statements to the highway patrol. Skatzes relies on Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215, which requires the state to disclose exculpatory evidence to the defense.
 {¶ 33} When he was first interviewed by the highway patrol after the riot, Williams denied having seen anything related to the murder of Earl Elder. Later, he made a statement incriminating Skatzes and another inmate, Jason Robb. Skatzes claims that his conviction should be vacated because he did not receive a copy of the statement Williams initially made to the highway patrol.
 {¶ 34} Skatzes' attorneys had been provided with the transcript of Jason Robb's trial, and they relied on it in preparing for Skatzes' trial. It was clear from Williams' testimony in both cases that he had given conflicting accounts to the highway patrol — first denying any knowledge of Elder's murder in L-6-60 and later implicating Skatzes in the killing. Because it is clear that Skatzes' attorneys were aware of the conflicting statements when they questioned Williams at trial, the trial court properly concluded that a claim based on Brady was barred by res judicata; such a claim could have been raised on direct appeal. The court also correctly concluded that there could have been no prejudice under these *Page 11 
circumstances. Thus, Skatzes' argument is without merit.
 {¶ 35} With respect to Spurlock, the summaries of highway patrol interviews provided to the defense before trial indicated that Spurlock had implicated Williams in Elder's murder. Counsel for postconviction relief contends that he did not receive copies of the full statements from previous counsel. Skatzes contends that this would have been "powerful impeachment and exculpatory evidence."
 {¶ 36} Based on the cross-examination at trial, the trial court concluded that trial counsel were, in fact, familiar with the content of Spurlock's statement to the highway patrol. Thus, the trial court concluded that the state had complied with Brady and had provided Skatzes' trial counsel with the statement, even if his subsequent attorneys did not receive it. The affidavits from trial counsel do not indicate that they did not receive Spurlock's statements. Because trial counsel was familiar with the exculpatory evidence, Skatzes has not demonstrated a Brady violation, and the court properly concluded that Skatzes' objection to the evidentiary issue was barred.
 {¶ 37} The third assignment of error is overruled.
 VI {¶ 38} Skatzes' fourth assignment of error states:
 {¶ 39} "THE TRIAL COURT ERRED IN REFUSING TO CONSIDER THE AFFIDAVIT OF INMATE BUDDY NEWELL AVERRING THAT SNODGRASS TOLD HIM HE PERJURED HIMSELF AT TRIAL REGARDING ELDER'S MURDER."
 {¶ 40} Skatzes contends that the trial court erred in failing to fully consider his allegation that inmate Roger Snodgrass committed perjury when testifying against him at trial. *Page 12 
 {¶ 41} Before we address Skatzes' argument, we will briefly recount Snodgrass's role in the riot and at trial.
 {¶ 42} According to the state's evidence, Skatzes and Jason Robb were the leaders of the Aryan Brotherhood, one of the prominent prison gangs, and Snodgrass was a "lieutenant" of the Aryan Brotherhood. After Elder was beaten at the outset of the riot, he was locked in cell L-6-60. He was suspected of being a "snitch" by the other inmates. On the first night of the riot, Skatzes approached Snodgrass and said that they needed to go to L-6-60. When they got there, Skatzes told Snodgrass to "take care of [his] business," which Snodgrass understood to mean that he was to kill the man in the cell. The cell door was unlocked for Snodgrass, and he proceeded to stab Elder with a weapon resembling an ice pick while Skatzes watched. Elder did not die immediately; he apparently survived until a third attack later that evening.
 {¶ 43} After Snodgrass left the cell, Skatzes put his arm around Snodgrass and complimented Snodgrass on the job he had done. Snodgrass testified at trial that he believed he would have been killed if he had not obeyed Skatzes' orders because of the Aryan Brotherhood's code of conduct.
 {¶ 44} Several days into the riot, the inmates were threatening to kill a corrections officer if several of their demands were not met. Skatzes was one of the Aryan Brotherhood's negotiators during this process and was present at a meeting of gang leaders where killing a guard had been discussed. Snodgrass testified at trial that Skatzes had been one of the voting members of the Aryan Brotherhood delegation and that he had not opposed killing a guard if the inmates' demands were not met. Vallandingham was killed on April 15 because the inmates demands were not met. *Page 13 
 {¶ 45} David Sommers was killed at the end of the riot, while the surrender was underway. Sommers had controlled the phones that were used for negotiations during the riot and, like Elder, he was suspected of being a "snitch." Sommers was choked, stabbed, and beaten with a baseball bat by several men in the cellblock showers. Snodgrass testified at trial about the planning and execution of this murder, including Skatzes' participation, which included hitting Sommers in the head with "hard * * * straight down swings" of a baseball bat. The coroner testified that Sommers died of a traumatic head injury.
 {¶ 46} In sum, Snodgrass's testimony at trial strongly supported the state's theories that Skatzes had been culpable in the murders of Elder, Vallandingham, and Sommers.
 {¶ 47} In his supplemental authority in support of postconviction relief, Skatzes included an affidavit from inmate Buddy Newell. Newell claimed that, after having a strained relationship with Roger Snodgrass at Lucasville, he and Snodgrass had rehabilitated their relationship at the Toledo Correctional Institution. He asserted that Snodgrass had admitted to lying at Skatzes' trial in order to "save his own life" when he testified that Skatzes had led him to L-6 to kill Elder. By contrast, Snodgrass allegedly told Newell that he had stabbed Elder on his own and that Girdy and Williams had followed with another attack on Elder. According to Newell, Snodgrass claimed that the prosecutors had been out to get the inmates who killed the corrections officer and had not cared about the inmate murders. Snodgrass had implicated Skatzes in the guard's murder in order to get favorable treatment even though no "white guys" had actually been involved. According to Newell, Snodgrass also admitted his own involvement in Sommers' murder but denied that Skatzes had been involved. *Page 14 
 {¶ 48} Although Newell's affidavit claims that Snodgrass recanted his trial testimony, Snodgrass filed an affidavit saying that he told the truth at trial. Moreover, much of Newell's affidavit is based on hearsay, and he did not have first hand knowledge of the claims he made. For example, Newell claims that Skatzes was not in L-6 when Vallandingham was killed and was not involved in that killing, while at the same time admitting that he (Newell) was not in L-6 until after Vallandingham was killed, and therefore could not have observed the events there. Moreover, none of Newell's assertions suggest that Skatzes was denied the effective assistance of counsel. Skatzes' claim that Newell's affidavit establishes his "actual innocence," without evidence of a constitutional violation, is insufficient to warrant postconviction relief. As such, the trial court properly denied such relief on the basis of Newell's affidavit. We will address Skatzes' claim that he is entitled to a new trial based on this same evidence later in our opinion.
 {¶ 49} The fourth assignment of error is overruled.
 VII {¶ 50} Skatzes' fifth and twelfth assignments of error are related, and we will address them together. They state:
 {¶ 51} "THE TRIAL COURT ERRED IN DENYING PETITIONER'S CLAIM THAT HIS RIGHTS TO DUE PROCESS WERE VIOLATED BECAUSE THE STATE PURSUED INCONSISTENT THEORIES FOR THE SOMMERS MURDER."
 {¶ 52} "THE TRIAL COURT ERRED IN FAILING TO ADDRESS AND UPHOLD PETITIONER'S CLAIM THAT HE WAS DENIED DUE PROCESS BECAUSE THE STATE PURSUED INCONSISTENT THEORIES AT THE SENTENCING PHASE."
 {¶ 53} Skatzes contends that his due process rights were violated because the state *Page 15 
charged and convicted two inmates — Skatzes and Aaron Jefferson — with the murder of David Sommers, when the evidence suggested only one fatal blow. He argues that these "inherently factually contradictory theories" violated his due process rights and the prosecutors' duty to seek justice impartially. He relies on Smith v. Groose (C.A.8, 2000),205 F.3d 1045 and Bradshaw v. Stumpf (2005), 545 U.S. 175, 187-188,125 S.Ct. 2398, 162 L.Ed.2d 143.
 {¶ 54} Stumpf involved a guilty plea and did not reach the question of whether the prosecutor's use of contradictory evidence at two different trials would have violated the defendant's due process rights. The Supreme Court concluded that Stumpf "never provided an explanation of how the prosecution's postplea use of inconsistent arguments could have affected the knowing, voluntary, and intelligent nature of his plea" and concluded that the prosecutor's actions did not require voiding Stumpfs plea. Stumpf, 545 U.S. at 187. Thus, the reasoning in Stumpf is inapplicable to Skatzes' case.
 {¶ 55} In Groose, the Eighth Circuit Court of Appeals found reversible error when, in separate trials, two defendants were separately convicted of the same murders through the prosecution's use of "diametrically opposed" statements by its key witness. The court held that the state was forbidden from using irreconcilable theories to secure convictions against two separate defendants in prosecutions for the same offenses arising out of the same event. Groose, 205 F.3d at 1049.
 {¶ 56} Here, the state's theories in obtaining murder convictions against Skatzes and Jefferson were not irreconcilable. The evidence established that a group of men savagely choked, stabbed, and beat Sommers about his head and torso. Although the coroner referred to the wound both as a fatal "blow" and fatal "injury," there was no *Page 16 
question that multiple inmates inflicted head injuries. The state's theory was that both Skatzes and Jefferson were complicit in the crime; there was no way to prove who had inflicted the fatal head injury. These theories are not "diametrically opposed." We also note that, pursuant to R.C. 2923.03(F), "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." A defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is stated in terms of the principal offense and does not mention complicity.State v. Herring, 94 Ohio St.3d 246, 251, 2002-Ohio-796, 762 N.E.2d 940. See, also, State v. Walton, Cuyahoga App. No. 88358, 2007-Ohio-5070, ¶ 20. The state's theory of the case did not produce inconsistent verdicts because it always acknowledged that there were multiple perpetrators. Skatzes' due process rights were not violated by this approach.
 {¶ 57} The fifth and twelfth assignments of error are overruled.
 VIII {¶ 58} Skatzes' sixth assignment of error states:
 {¶ 59} "THE TRIAL COURT ERRED IN REJECTING PETITIONER'S FIRST GROUND FOR RELIEF, THAT PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF TRIAL COUNSEL'S FAILURE TO CALL EXCULPATORY WITNESSES REGARDING THE SOMMERS MURDER."
 {¶ 60} Skatzes presented affidavits from inmates Aaron Jefferson, Jesse Bocook, and Wayne Flannigan, each of whom claimed that Skatzes had not been involved in Sommers' murder, and from his trial attorneys, who claimed that they had not had a strategic reason for failing to call these inmate witnesses. Skatzes claims that these *Page 17 
affidavits demonstrate the ineffective assistance of trial counsel in failing to call the inmates to testify on his behalf. The trial court disagreed.
 {¶ 61} As the trial court noted, testimony at Skatzes' trial revealed that Jefferson had been present at Sommers' murder and might have been able to provide exculpatory evidence. Thus, the failure to call Jefferson could have been raised on direct appeal and is barred by res judicata.
 {¶ 62} Neither Jefferson, Bocook, nor Flannigan indicated in his affidavit that Skatzes' trial counsel or other agents of the state knew of the information contained therein before trial, and the attorneys do not claim that they knew this information before trial. If counsel had no reason to know of or suspect these claims, the affidavits fail to establish the constitutional violation of ineffective assistance of counsel.
 {¶ 63} Furthermore, the credibility of the inmates' affidavits is questionable. The trial court observed that the affidavits "raise several red flags." For example, the affidavits of Jefferson and Bocook are inconsistent as to who was involved in killing Sommers, and the inmates' stories have changed over time.
 {¶ 64} The trial court properly concluded that Skatzes' evidence on this issue did not establish that he had been denied the effective assistance of counsel.
 {¶ 65} The sixth assignment of error is overruled.
 IX {¶ 66} Skatzes' seventh assignment of error states:
 {¶ 67} "THE TRIAL COURT ERRED IN DENYING PETITIONER'S CLAIM THAT HIS RIGHTS TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED BY THE TRIAL COURT'S JURY INSTRUCTION MAKING PETITIONER *Page 18 
ELIGIBLE FOR THE DEATH PENALTY FOR SOMMERS' MURDER."
 {¶ 68} Skatzes claims that a recent Sixth Circuit Court of Appeals ruling in Joseph v. Coyle (C.A.6, 2006), 469 F.3d 441, establishes that the jury instructions in his case with respect to whether he acted as a "principal offender" in the Sommers murder were constitutionally unsound. Counsel did not object to the instruction at trial. Skatzes claims that his right to due process and to the effective assistance of counsel were violated.
 {¶ 69} The state contends that this claim is barred by res judicata because it does not rely on any evidence outside the record and could have been raised on direct appeal. The state also points out that this claim was not raised in the petition filed in the lower court.
 {¶ 70} Although Joseph was decided after Skatzes' appeal, the record supports the state's assertions that this argument was not raised in the petition for postconviction relief and that it could have been raised on direct appeal. Moreover, Joseph involved an egregious failure on the part of trial counsel to understand the nature of the "principal offender" specification and to correct erroneous instructions given by the court, which included an incorrect identification of the offense for which the defendant was alleged to have been the principal offender. That case is not analogous to Skatzes' case.
 {¶ 71} The seventh assignment of error is overruled.
 X {¶ 72} Skatzes' eighth assignment of error states:
 {¶ 73} "THE TRIAL COURT ERRED IN DENYING PETITIONER'S TWELFTH GROUND FOR RELIEF, THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO CALL A PRISON CULTURE *Page 19 
EXPERT TO EXPLAIN HIS STATEMENT RELEVANT TO THE VALLANDINGHAM MURDER."
 {¶ 74} Skatzes asserts that, had his attorney called a prison culture expert to testify at trial, he would have been acquitted of Vallandingham's murder. He claims that such an expert would have explained that the hesitation Skatzes allegedly expressed during the discussions of whether to kill a guard "were as far as an inmate could go in expressing dissent without fear of personal bodily injury or possibly even death." The state claims that this claim is barred by res judicata because it could have been raised on direct appeal, that the evidence would have been cumulative of other evidence that Skatzes was hesitant to kill the guard, and that such evidence would not have been admissible because an expert was not needed to interpret Skatzes' comments.
 {¶ 75} The trial court concluded that Skatzes' claim was barred by res judicata because the record establishes that counsel's failure to call a prison culture expert could have been raised on direct appeal. Further, the court concluded that Skatzes had not shown that the failure to call a prison culture expert fell below an objectively reasonable level of representation.
 {¶ 76} Because Skatzes' argument about the need for a prison culture expert relies, at least in part, on evidence outside the record, it may not have been properly raised on direct appeal, as the trial court suggested. However, we agree with the trial court's conclusion that Skatzes failed to show that it was objectively unreasonable not to call such an expert. We question whether the peer pressure that existed in the midst of the riot was really an issue about which expert testimony was needed or appropriate. Extensive evidence was presented to the jury about the dynamics within and among the various *Page 20 
prison gangs during the riot, the amount of violence used to control and punish inmate behavior, and the stress of the negotiations with authorities. In our view, the jurors were capable of interpreting Skatzes' behavior under these circumstances without the benefit of expert testimony. Thus, trial counsel could have reasonably concluded that such an expert was unnecessary.
 {¶ 77} The eighth assignment of error is overruled.
 XI {¶ 78} Skatzes' ninth assignment of error states:
 {¶ 79} "THE TRIAL COURT ERRED IN DENYING PETITIONER'S TWENTY-NINTH GROUND FOR RELIEF WITH RESPECT TO THE VALLANDINGHAM MURDER, BECAUSE THE TRIAL RECORD IS BARREN OF EVIDENCE TO SUPPORT PETITIONER'S CONVICTION FOR THAT MURDER."
 {¶ 80} Skatzes claims that his conviction of Vallandingham's murder "shocks the conscience" because it is based on "nonprobative evidence." He relies, in part, on a statement in the supreme court's decision affirming his conviction that Vallandingham was "killed * * * by Muslim inmates." Skatzes, 104 Ohio St.3d 195.
 {¶ 81} Skatzes does not rely on any new evidence. He simply claims that he should have been found not guilty because his conviction was supported by insufficient evidence. Again, this argument was appropriate on direct appeal. Indeed, it was thoroughly addressed at that juncture. Skatzes was not entitled to further consideration of this issue as grounds for postconviction relief.
 {¶ 82} The ninth assignment of error is overruled.
 XII *Page 21 {¶ 83} Skatzes' tenth assignment of error states:
 {¶ 84} "THE TRIAL COURT ERRED IN DENYING PETITIONER'S SEVENTEENTH GROUND FOR RELIEF, THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO RETAIN ADEQUATE INVESTIGATORS AND PROPERLY SUPERVISE THE INVESTIGATION."
 {¶ 85} Skatzes contends that trial counsel failed to retain adequate investigators to assist with his case and failed to properly supervise the investigation.
 {¶ 86} Like many of Skatzes' other arguments, this objection could have been raised at trial and is barred by res judicata. Furthermore, Skatzes did not present evidence to support his claim that the investigators were inadequate, although his attorneys apparently experienced some frustration with their work product. The attorneys admit that, in hindsight, they should have provided more direction to the investigators and that it was very taxing for them to conduct an investigation while preparing for trial. However, investigators were provided to the defense and a substantial sum was paid to the second investigator -at trial counsel's request — at the end of the trial. Moreover, Skatzes has not demonstrated that the investigators failed to uncover probative evidence that would have affected the outcome of his case and that was not cumulative of the other evidence offered at trial.
 {¶ 87} For these reasons, the tenth assignment of error is overruled.
 XIII {¶ 88} Skatzes' eleventh assignment related to the denial of postconviction relief states:
 {¶ 89} "THE TRIAL COURT ERRED IN DENYING PETITIONER'S TWENTIETH, TWENTY-THIRD, TWENTY-FOURTH, TWENTY-FIFTH, AND TWENTY-SEVENTH *Page 22 
GROUNDS FOR RELIEF, THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO CONDUCT AND PRESENT AN ADEQUATE MITIGATION CASE."
 {¶ 90} Skatzes contends that trial counsel failed to utilize a "wealth of information" that could have helped to mitigate his sentence and that counsel was thus ineffective in representing him. Specifically, Skatzes contends that his attorneys did not hire a competent mitigation expert to investigate the evidence that might have been offered in his case. As a result, he claims that he was deprived of the possibility that a lesser sentence might have been imposed if counsel had more thoroughly explored and presented evidence about his childhood, a prior head injury, and his mental health.
 {¶ 91} Skatzes relies on Wiggins v. Smith (2003), 539 U.S. 510,123 S.Ct. 2527, 156 L.Ed.2d 471, which held that trial counsel cannot make a reasonable strategic decision not to present extensive evidence about a defendant's background in mitigation without having first investigated the defendant's background. The Court held that, without an investigation, counsel cannot be presumed to have made a reasonable and informed strategic decision. The Court defined the deference owed an attorney's strategic judgments in terms of the adequacy of the investigations supporting those judgments, stating:
 {¶ 92} "[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes *Page 23 
particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Wiggins, 539 U.S. at 521-522, citingStrickland, 466 U.S. at 690-691. See, also, Williams v. Taylor (2000),529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 .
 {¶ 93} In Wiggins, the Court concluded that the trial attorneys had acted unreasonably and ineffectively in failing to investigate Wiggins' background before deciding not to present mitigating evidence based on his background during the sentencing proceedings. In a report prepared for the postconviction proceedings, a forensic social worker reported that Wiggins, who was 27 years old and had no history of violent behavior, had suffered severe physical and sexual abuse in his childhood. His alcoholic mother had left Wiggins and his siblings home alone for days, forcing them to beg for food and eat paint chips and garbage. She locked the kitchen to keep the children from getting food, and she beat them if they broke in. She had sex with men while her children were in the same bed and, on one occasion, intentionally burned Wiggins on a hot stove burner. When he had been removed to foster care, Wiggins continued to suffer abuse. He was physically abused by two foster mothers and was molested and raped by a foster father. In another foster home, he was repeatedly gang-raped by other children in the home.Wiggins, 539 U.S. at 513-517. Moreover, Wiggins' trial counsel did not hire a forensic social worker to prepare a social history of Wiggins, even though the state made funds available for that purpose. Some of counsel's statements at trial indicated that counsel had no knowledge of the abuse. These factors led the Court to conclude that counsel's investigation of mitigation evidence did not reflect reasonable professional judgment, and *Page 24 
thus did not meet Strickland's performance standards. Id. at 533.
 {¶ 94} Skatzes contends that, as in Wiggins, his counsel failed to thoroughly and effectively investigate his background for mitigation evidence and to present that evidence at trial. In affidavits from his attorneys and the mitigation investigator, Skatzes presented evidence that the mitigation investigator hired by his attorneys was inexperienced and that the attorneys did not closely oversee her work. Skatzes' attorneys also claim in their affidavits that they were unaware of any abuse or neglect. The mitigation investigator stated that she spoke with Skatzes' sister numerous times during her investigation, but that other family members did not return her calls and that Skatzes attempted to "dictate" the questions she would ask.
 {¶ 95} Although Skatzes' attorneys appear to have been unaware of the alleged abuse in his childhood, there is no suggestion in the petition for postconviction relief that Skatzes' abuse was analogous to the abuse in Wiggins. When he sought postconviciton relief, Skatzes' former wife, who did not have first-hand knowledge of many of the incidents recounted in her affidavit, offered the following evidence: Skatzes' mother raised him, his sister, and two older half-brothers alone; he was close to his sister but his relationships with the older half-siblings were strained; Skatzes' mother brought many men to the house and engaged in sexual activity with them; Skatzes' mother verbally abused the children; Skatzes' father's death when he was 14 hit him very hard; Skatzes' mother was "cold" and "bitter" and did not show any warmth toward the children; and the children's clothes were often dirty, second-hand, and a source of embarrassment. A childhood friend also stated by affidavit that Skatzes' half-brothers frequently "beat on him." Although these factors paint a picture of Skatzes' childhood that is far from than idyllic, they are much less *Page 25 
egregious than the incidents endured by Wiggins.
 {¶ 96} There are also several references in the record to the fact that Skatzes did not cooperate with the involvement of his family in his defense. Skatzes apparently thought that the corrections officer who testified on his behalf was treated harshly by the prosecutors, and he therefore did not want family members called to testify. According to the mitigation investigator, this lack of cooperation extended to her efforts to speak with Skatzes' family. He placed limits on what he wanted the investigator to do, and family members did not cooperate with her efforts to contact them. Thus, trial counsel's ignorance of the abuse now alleged does not appear to have been attributable to a lack of effort, but to a lack of cooperation. As such, it does not constitute ineffective assistance of counsel.
 {¶ 97} Skatzes also contends that trial counsel should have gathered and presented evidence about his "possible traumatic head injury" and depression. On direct appeal, however, Skatzes challenged counsel's effectiveness for failing to present evidence of mental illness. These arguments are substantially similar. Moreover, Skatzes' evidence in support of a head injury and consequent behavioral issues was very thin. He presented an affidavit and report from Douglas W. Scharre, M.D., a professor of neurology and psychiatry, who noted "mild" and "slight" impairments and "hints" of dysfunction. We think it very unlikely that this evidence would have had a significant impact on the jury's determination.
 {¶ 98} In sum, we conclude that the trial court did not abuse its discretion when it concluded that the proffered mitigation evidence would not have changed that outcome of the trial and that counsel were not ineffective in failing to discover or present it. *Page 26 
 {¶ 99} The eleventh assignment of error is overruled.
 XIV {¶ 100} We now turn to Skatzes' assignments of error in his appeal from the denial of his motion for new trial. We begin with the standard of review.
 {¶ 101} A trial court may grant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim. R. 33(A)(6). We review the trial court's denial of a motion for a new trial for an abuse of discretion. State v. Henderson, Montgomery App. No. 21865, 2007-Ohio-5982. "Before a new trial can be granted upon the basis of newly discovered evidence, the defendant must show that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Vinzant, Montgomery App. No. 22383, 2008-Ohio-4399, at ¶ 7.
 XV {¶ 102} We will address Skatzes' first and second assignments of error on appeal from the denial of his motion for new trial together. These assignments state:
 {¶ 103} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT A NEW TRIAL FOR THE MURDER OF EARL ELDER BASED ON NEW EVIDENCE THAT THE STATE'S STAR WITNESS COMMITTED PERJURY."
 {¶ 104} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT A NEW TRIAL FOR THE MURDER OF DAVID SOMMERS BASED ON NEW EVIDENCE THAT *Page 27 
THE STATE'S STAR WITNESS COMMITTED PERJURY"
 {¶ 105} Under his first and second assignments of error, Skatzes claims that Roger Snodgrass's alleged recantation of his trial testimony to Buddy Newell constituted new evidence that could have changed the outcome of his trial. As we discussed under Skatzes' fourth assignment of error regarding postconviction relief, Newell claimed that Snodgrass had recanted his trial testimony about Skatzes' involvement in Earl Elder's and David Sommers' murders. Newell's claims were based on statements that were allegedly made to him by Snodgrass while they were in prison together. The statements directly contradict Snodgrass's trial testimony and an affidavit submitted by Snodgrass. Skatzes asserts, however, that Snodgrass had an incentive to lie in his affidavit in order to avoid perjury charges. Skatzes contends that the trial judge "ordinarily should hold an evidentiary hearing" under these circumstances to assess the credibility of the affidavits.
 {¶ 106} As the state points out, Newell did not have firsthand knowledge of some of the central allegations in his affidavits, such as the nature of the conversations between Snodgrass and the prosecutors. There are other reasons to doubt the credibility of the Newell affidavit as well, such as inconsistencies between the timeline that Newell recounts and the timing of Snodgrass's plea. More importantly, even if the trial court credited the statements in Newell's affidavit, the evidence only serves to impeach or contradict the evidence offered at trial. Such evidence does not justify a new trial. Vinzant,2008-Ohio-4399, at ¶ 6 and 7. As such, the trial court did not err in denying the motion for new trial based on Newell's affidavit.
 {¶ 107} The first and second assignment of error on appeal from the motion for new trial are overruled. *Page 28 
 XVI {¶ 108} The third assignment of error states:
 {¶ 109} "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT A NEW TRIAL ON THE PENALTY FOR THE MURDER OF DAVID SOMMERS WHEN NEW EVIDENCE REVEALED THAT SKATZES COULD NOT HAVE BEEN THE PRINCIPAL OFFENDER UNDER OHIO LAW."
 {¶ 110} Skatzes claims that the Supreme Court of Ohio's decision on his direct appeal and a Sixth Circuit Court of Appeals decision inJoseph v. Coyle, 469 F.3d 441, establish that he should not have been convicted as a "principal offender" in Sommers' murder, and therefore should not have been eligible for the death penalty in that case. This argument resembles Skatzes' argument under his fifth and twelfth assignments of error on appeal from the denial of postconviction relief, in which he also asserted that he was not the "principal offender." Skatzes contends that the supreme court and the Sixth Circuit found that the jury instruction on "principal offenders" and trial counsel's failure to object to that instruction were "errors of constitutional magnitude."
 {¶ 111} Although Skatzes purportedly relies on Newell's affidavit that Snodgrass recanted his trial testimony as the new evidence warranting a new trial, the argument Skatzes advances herein is essentially a legal argument about whether the jury was properly instructed on the definition of a "principal offender," and we will address it as such.
 {¶ 112} First, we must point out that the supreme court affirmed Skatzes' conviction on appeal. Skatzes, 104 Ohio St.3d 195. Thus, it obviously did not find an error "of constitutional magnitude" in the jury instructions. The supreme court held that the trial *Page 29 
court's instruction describing a principal offender as one with "hands-on involvement" was not specific enough, and that principal offender means "actual killer." But the supreme court held that the trial court's instruction was harmless error. Skatzes had denied being present when Sommers was attacked, but the jury had believed the state's evidence that he had been "an actual killer of Sommers." Id. at ¶ 78. Thus, the supreme court has essentially addressed and rejected Skatzes' contention that there is a strong probability that the result of the trial would have been different if different jury instructions had been given.
 {¶ 113} Joseph is clearly distinguishable from Skatzes' case. InJoseph, the defendant was indicted as a principal offender in the commission of a kidnapping as the only capital specification, even though Ohio law required that a defendant be a principal offender in an aggravated murder to support a capital specification. Trial counsel failed to object to the indictment or to the jury instructions containing the same error. The prosecution conceded that it could not prove that the defendant had actually killed the victim, and in light of this concession, there was a reasonable probability that the jury would have found defendant not guilty of the specification for which the death penalty was imposed if counsel had objected to it. The error in Skatzes' case was not nearly so significant, and Joseph does not support Skatzes' contention that he was entitled to a new trial.
 {¶ 114} The third assignment of error is overruled.
 XVII {¶ 115} Having overruled Skatzes' assignments of error related to the petition *Page 30 
for postconviction relief and the motion for new trial, the judgment of the trial court will be affirmed.
 BROGAN, J. and FAIN, J., concur. *Page 1