597 So.2d 252 (1992)
Milford Wade BYRD, Appellant,
v.
STATE of Florida, Appellee.
No. 74691.
Supreme Court of Florida.
February 20, 1992.
Rehearing Denied May 26, 1992.
*253 Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Deputy Chief Asst. CCR and Julie D. Naylor, Asst. CCR, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Fariba N. Komeily, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Milford Wade Byrd appeals the denial of his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm.
Byrd was convicted of murdering his wife. In accordance with the jury's recommendation, the trial judge sentenced Byrd to death. This Court affirmed the conviction and sentence in Byrd v. State, 481 So.2d 468 (Fla. 1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). In May, 1988, Byrd filed a motion for postconviction relief and presented nineteen claims to the circuit court. The circuit court summarily denied sixteen claims and denied relief on the remaining three claims after an evidentiary hearing.
The essential facts surrounding the murder were set fourth in our original opinion, as follows:
Appellant and his wife, Debra, managed a motel in Tampa. Debra's body was found on the floor of the motel office at approximately 7:00 a.m. on October 13, 1981. An autopsy revealed that Debra had suffered four non-fatal scalp lacerations, four non-fatal gunshot wounds, and scratches and bruises on the neck. The pathologist determined that the cause of death was strangulation and that death had occurred between 9:00 p.m. on October 12 and 3:00 a.m. on October 13.
During the interrogation on the morning of October 13, appellant told police that, on the night of the murder, he had gone to a gym and then to two bars. He stated that he returned home to the motel around 6:45 a.m., found his wife's body and called the police. Later that morning appellant requested that a desk clerk at the motel contact a life insurance company with reference to an insurance policy on Debra's life. Appellant was the sole beneficiary of the $100,000 policy. Five days later, on October 19, appellant personally carried a copy of Debra's death certificate to the insurance company and twice inquired as to how long settlement of the policy claim would take.
Ronald Sullivan, a resident of the motel, was arrested for violation of parole on October 27 and was subsequently charged with Debra's murder. After interviewing Sullivan the police decided that they had probable cause to arrest appellant. At 2:30 a.m. on October 28, the police arrived at the appellant's residence at the motel where they awoke appellant and arrested him for the first-degree murder of his wife. Although *254 the arresting officers had no arrest warrant when they went to appellant's residence, it is undisputed that they had probable cause to arrest appellant. One of the arresting officers knocked on appellant's door, identified himself to appellant through a window, and mentioned that he had previously spoken to him with regard to the death of appellant's wife. After a few seconds appellant opened the door and stepped back. The detective then took a step inside, placed appellant under arrest for the murder of his wife, and advised him of his rights. In the motel room with appellant was his girlfriend, who was asked by the officers to accompany them to the police station. The woman voluntarily accompanied the officers.
At the police station appellant was again advised of his rights. He signed a written waiver of his rights at 2:55 a.m. Appellant neither admitted nor denied involvement in the crime until approximately 4:40 a.m. when he told the police he would tell them the truth if he could speak privately with his girlfriend. The detectives allowed appellant to spend some time alone with his girlfriend and, when questioning resumed, appellant's girlfriend re-entered the interrogation room and appellant gave a confession.
481 So.2d at 469-70.
On appeal, Byrd has presented seventeen claims for our consideration. We find that eleven of these claims are procedurally barred because they either were or could have been raised in the direct appeal. To the extent that the claims also suggest ineffective assistance of counsel, they are denied on the merits. The claims so disposed of include: (1) whether Byrd was convicted on the basis of evidence obtained in violation of his constitutional rights and his invocation of his right to silence was ignored and a confession was coerced from him and used against him because his counsel failed to present the proper facts; (2) whether Byrd was convicted and sentenced on the basis of statements obtained in violation of his constitutional rights; (3) whether Byrd's constitutional rights were violated when law enforcement officers entered his home without a warrant to effectuate his arrest; (4) whether the exclusion of critical evidence rendered Byrd's sentence of death fundamentally unreliable; (5) whether Byrd was improperly denied his right to cross-examine key State witnesses on matters that would have undermined their credibility; (6) whether the trial court unconstitutionally shifted the burden of proof by its sentencing instructions; (7) whether the jury's sense of responsibility for sentencing was diluted by the court's instructions and counsel's arguments; (8) whether the jury instructions regarding aggravating factors perverted the sentencing phase, resulting in the arbitrary and capricious imposition of the death penalty; (9) whether the jury instructions regarding nonstatutory aggravating factors perverted the sentencing phase resulting in the arbitrary and capricious imposition of the death penalty; (10) whether the presentation of victim-impact testimony denied Byrd's rights to a fundamentally fair and reliable capital sentencing; and (11) whether failure to consider nonstatutory mitigating factors violated Byrd's rights.
We find it appropriate to discuss the remaining claims under four headings: (1) whether Byrd was deprived of his due process rights and a fair trial when he was prosecuted by an assistant state attorney with a personal, familial, and financial interest in obtaining a conviction, as well as his claim that he was deprived of a fair trial as a result of the State's nondisclosures; (2) whether the jury was misled about its function at the sentencing phase; (3) whether Byrd received ineffective assistance of counsel; and (4) whether the State withheld exculpatory evidence.
Regarding the first claim, Byrd alleges that he was denied the right to due process and a fair trial because the assistant state attorney who prosecuted him had a personal, familial, and financial interest in obtaining his conviction. Byrd alleges that the assistant state attorney received $1,600 from his brother-in-law, who received a $16,000 contingency fee as a result of a civil action brought by the victim's sister to obtain life insurance proceeds. *255 This money resulted from the termination of Byrd's rights to his deceased wife's life insurance proceeds. Byrd claims that the assistant state attorney and his family benefitted from his exercise of prosecutorial discretion. In response to Byrd's motion for postconviction relief, the circuit court held a full evidentiary hearing regarding these claims. In his order, the trial judge set forth in detail his findings as follows:
The Court conclusively finds from the evidence presented in support of this most serious allegation that there is no merit to this Claim. Although it is undisputed that one of the Assistant State Attorneys involved in the prosecution of the Defendant referred the victim's sister to his brother-in-law for legal representation in connection with a Federal interpleader action directed to the proceeds of a life insurance policy on the victim of which the Defendant was the primary beneficiary, it is also undisputed that:
1. He made the referral out of his concern for the victim's family.
2. He referred the case to his brother-in-law because he trusted him, knew him to be a very ethical attorney and knew he would render competent legal services. Moreover, because of his relationship with his brother-in-law, this Assistant State Attorney had referred other prospective clients to him for which he never received a referral fee.
3. He made it clear to the victim's sister that if she had a problem with his brother-in-law to advise him and he would supply her with the name of another lawyer.
4. He never discussed, expected or received any referral fee or benefit from his brother-in-law in connection with the civil case.
5. One of the main reasons the victim's sister prevailed in the interpleader action on a Motion for Summary Judgment was because the Defendant filed no objection even though he was served with a copy of the motion through counsel.
6. The check given to the Assistant State Attorney by his brother-in-law after the conviction of the Defendant and the resolution of the civil action was nothing more than a gift from one close family member to another and the Assistant State Attorney reported this gift on his financial disclosure form for the year ending December 31, 1983.
7. At no time did the Assistant State Attorney conduct himself in the prosecution of the Defendant in any manner which manifested a desire or objective on his part to accomplish a result that was unreasonable.
8. There were no decisions made in the prosecution of the Defendant which were based upon what transpired between the Assistant State Attorney and his brother-in-law.
Accordingly, this Court concludes that there is absolutely no evidence that this Assistant State Attorney had any pecuniary interest or financial motive in obtaining a conviction of murder in the first degree as to this Defendant. Therefore, this claim is denied.
We find that the circuit judge took particular care in setting forth his findings after noting that he considered (1) the evidence and testimony introduced at the defendant's trial, (2) the evidence and testimony presented at the evidentiary hearing, and (3) the law submitted to the court by counsel. After a careful review of the record in this case, we find that the findings and holdings of the trial judge are clearly supported by the record. We specifically agree that the record supports the trial court's conclusion that the assistant state attorney had no knowledge that he was going to receive a referral fee from his brother-in-law. Further, we find that the record supports the trial court's finding that there was no nondisclosure of information known by the prosecution at trial.
We next consider Byrd's second claim, in which he alleges that the jury was misled and incorrectly informed about its function during the sentencing phase, in violation of Byrd's Eighth and Fourteenth Amendment rights. Byrd claims that the *256 jury was not informed that, if there was a six-to-six split, life would be recommended. Byrd asserts that the prosecutor's comments and the jury instructions deprived him of his rights by informing the jury that the verdict would be by majority vote.
Byrd argues that since Hitchcock v. Wainwright, 770 F.2d 1514 (11th Cir.1985), rev'd on other grounds, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), held for the first time that the Eighth Amendment applied to Florida penalty phase proceedings in front of the jury, this retroactive change in the law is cognizable in a rule 3.850 proceeding. Byrd argues that the principles established in Hitchcock were a change in the law, that he is entitled to the benefits of this change, and, consequently, that this Court must vacate his sentence of death for a new sentencing proceeding.
We agree with the trial court that this claim is procedurally barred since it was not raised on direct appeal. See Blanco v. Wainwright, 507 So.2d 1377 (Fla. 1987). Further, and as important, there was no erroneous jury instruction in this case. The jury was specifically instructed:
[I]f by six or more votes the jury determines that the defendant should not be sentenced to death, your advisory sentence will be:
"The jury advises and recommends to the Court that it impose a sentence of life imprisonment upon the defendant without possibility of parole for twenty-five years."
(Emphasis added.) Accordingly, there is no justification for relief on this claim.
Byrd also argues that the State improperly withheld exculpatory evidence. We conclude that there is no violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Finally, Byrd made numerous claims in this rule 3.850 proceeding that he was deprived of the effective assistance of counsel in both the guilt and penalty phases of his trial, in violation of his Sixth, Eighth, and Fourteenth Amendment rights. The trial judge specifically addressed each of these claims and denied relief. We find that the trial judge properly applied the principles of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and this record clearly supports his holding.
Accordingly, we affirm the trial court's denial of Byrd's motion for postconviction relief.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
SHAW, C.J., and BARKETT and KOGAN, JJ., concur in result only.