Justice O’Connor
delivered the opinion of the Court.
This case concerns respondent John David Stumpf’s conviction and death sentence for the murder of Mary Jane Stout. In adjudicating Stumpf’s petition for a writ of ha-beas corpus, the United States Court of Appeals for the Sixth Circuit granted him relief on two grounds: that his guilty plea was not knowing, voluntary, and intelligent, and that his conviction and sentence could not stand because the State, in a later trial of Stumpf’s accomplice, pursued a theory of the case inconsistent with the theory it had advanced *178 in Stumpf’s case. We granted certiorari to review both holdings. 543 U. S. 1042 (2005).
I
On May 14, 1984, Stumpf and two other men, Clyde Daniel Wesley and Norman Leroy Edmonds, were traveling in Edmonds’ car along Interstate 70 through Guernsey County, Ohio. Needing money for gas, the men stopped the car along the highway. While Edmonds waited in the car, Stumpf and Wesley walked to the home of Norman and Mary Jane Stout, about Í00 yards away. Stumpf and Wesley, each concealing a gun, talked their way into the home by telling the Stouts they needed to use the phone. Their real object, however, was robbery: Once inside, Stumpf held the Stouts at gunpoint, while Wesley ransacked the house. When Mr. Stout moved toward Stumpf, Stumpf shot him twice in the head, causing Mr. Stout to black out. After he regained consciousness, Mr. Stout heard two male voices coming from another room, and then four gunshots — the shots that killed his wife. Edmonds was arrested shortly afterward, and his statements led the police to issue arrest warrants for Stumpf and Wesley. Stumpf, who surrendered to the police, at first denied any knowledge of the crimes. After he was told that Mr. Stout had survived, however, Stumpf admitted to participating in the robbery and to shooting Mr. Stumpf. But he claimed not to have shot Mrs. Stout, and he has maintained that position ever since.
The proceedings against Stumpf occurred while Wesley, who had been arrested in Texas, was still resisting extradition to Ohio. Stumpf was indicted for aggravated murder, attempted aggravated murder, aggravated robbery, and two counts of grand theft. With respect to the aggravated murder charge, the indictment listed four statutory “specifications” — three of them aggravating circumstances making Stumpf eligible for the death penalty. See App. 117-118; *179 Ohio Rev. Code Ann. §2929.03 (Anderson 1982).* The case was assigned to a three-judge panel in the Court of Common Pleas.
Rather than proceed to trial, however, Stumpf and the State worked out a plea agreement: Stumpf would plead guilty to aggravated murder and attempted aggravated murder, and the State would drop most of the other charges; with respect to the aggravated murder charge, Stumpf would plead guilty to one of the three capital specifications, with the State dropping the other two. The plea was accepted after a colloquy with the presiding judge, and after a hearing in which the panel satisfied itself as to the factual basis for the plea.
Because the capital specification to which Stumpf pleaded guilty left him eligible for the death penalty, a contested penalty hearing was held before the same three-judge panel. Stumpf’s mitigation case was based in part on his difficult childhood, limited education, dependable work history, youth, and lack of prior serious offenses. Stumpf’s principal argument, however, was that he had participated in the plot only at the urging and under the influence of Wesley, that it was Wesley who had fired the fatal shots at Mrs. Stout, and that Stumpf’s assertedly minor role in the murder counseled against the death sentence. See § 2929.04(B)(6) (directing the sentencer to consider as a potential mitigating circumstance, “[i]f the offender was a participant in the offense but not the principal offender, the degree of the offender’s participation in the offense”). The State, on the other hand, argued that Stumpf had indeed shot Mrs. Stout. Still, while the prosecutor claimed Stumpf’s allegedly primary role in the shooting as a special reason to reject Stumpf’s mitigation argument, the prosecutor also noted that Ohio law did not restrict the death penalty to those who commit murder by their own hands — an accomplice to murder could also receive *180 the death penalty, so long as he acted with the specific intent to cause death. As a result, the State argued, Stumpf deserved death even if he had not personally shot Mrs. Stout, because the circumstances of the robbery provided a basis from which to infer Stumpf’s intent to cause death. The three-judge panel, agreeing with the State’s first contention, specifically found that Stumpf “was the principal offender” in the aggravated murder of Mrs. Stout. App. 196. Determining that the aggravating factors in Stumpf’s case outweighed any mitigating factors, the panel .sentenced Stumpf to death.
Afterward, Wesley was successfully extradited to Ohio to stand trial. His case was tried to a jury, before the same judge who had presided over the panel overseeing Stumpf’s proceedings, and with the same prosecutor. This time, however, the prosecutor had new evidence: James Eastman, Wesley’s cellmate after his extradition, testified that Wesley had admitted to firing the shots that killed Mrs. Stout. The prosecutor introduced Eastman’s testimony in Wesley’s trial, and in his closing argument he argued for Eastman’s credibility and lack of motive to lie. The prosecutor claimed that Eastman’s testimony, combined with certain circumstantial evidence and with the implausibility of Wesley’s own account of events, proved that Wesley was the principal offender in Mrs. Stout’s murder — and that Wesley therefore deserved to be put to death. One way Wesley countered this argument was by noting that the prosecutor had taken a contrary position in Stumpf’s trial, and that Stumpf had already been sentenced to death for the crime. Wesley also took the stand in his own defense, and testified that Stumpf had shot Mrs. Stout. In the end, the jury sentenced Wesley to life imprisonment with the possibility of parole after 20 years.
After the Wesley trial, Stumpf, whose direct appeal was still pending in the Ohio Court of Appeals, returned to the Court of Common Pleas with a motion to withdraw his guilty plea or vacate his death sentence. Stumpf argued that *181 Eastman’s testimony, and the prosecution’s endorsement of that testimony in Wesley’s trial, cast doubt upon Stumpf’s conviction and sentence. The State (represented again by the same prosecutor who had tried both Wesley’s case and Stumpf’s original case) disagreed. According to the prosecutor, the court’s first task was to decide whether the Eastman testimony was sufficient to alter the court’s prior determination that Stumpf had been the shooter. Id., at 210. Contrary to the argument he had presented in the Wesley trial, however, the prosecutor now noted that Eastman’s testimony was belied by certain other evidence (ballistics evidence and Wesley’s testimony in his own defense) confirming Stumpf to have been the primary shooter. In the alternative, the State noted as it had before that an aider-and-abettor theory might allow the death sentence to be imposed against Stumpf even if he had not shot Mrs. Stout.
Although one judge speculated during oral argument that the court’s earlier conclusion about Stumpf’s principal role in the killing “may very well have had an effect upon” the prior sentencing determination, ibid., the Court of Common Pleas denied Stumpf’s motion in a brief summary order without explanation. That order was appealed together with the original judgment in Stumpf’s case, and the Ohio Court of Appeals affirmed, as did the Ohio Supreme Court. State v. Stumpf, 32 Ohio St. 3d 95, 512 N. E. 2d 598 (1987), cert. denied, 484 U. S. 1079 (1988).
After a subsequent request for state postconviction relief was denied by the state courts, Stumpf filed this federal habeas petition in the United States District Court for the Southern District of Ohio in November 1995. The District Court denied Stumpf relief, but granted permission to appeal on four claims, including the two at issue here. The United States Court of Appeals for the Sixth Circuit reversed, concluding that habeas relief was warranted on “either or both” of “two alternative grounds.” Stumpf v. Mitchell, 367 F. 3d 594, 596 (2004). First, the court determined that Stumpf’s *182 guilty plea was invalid because it had not been entered knowingly and intelligently. More precisely, the court concluded that Stumpf had pleaded guilty to aggravated murder without understanding that specific intent to cause death was a necessary element of the charge under Ohio law. See Ohio Rev. Code Ann. §§ 2903.01(B) and (D). Noting that Stumpf had all along denied shooting Mrs. Stout, and considering those denials inconsistent with an informed choice to plead guilty to aggravated murder, the Court of Appeals concluded that Stumpf must have entered his plea out of ignorance. Second, the court concluded that “Stumpf’s due process rights were violated by the state’s deliberate action in securing convictions of both Stumpf and Wesley for the same crime, using inconsistent theories.” 367 F. 3d, at 596. This violation, the court held, required setting aside “both Stumpf’s plea and his sentence.” Id., at 616. One member of the panel dissented.
II
Because Stumpf filed his habeas petition before enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we review his claims under the standards of the pre-AEDPA habeas statute. See Lindh v. Murphy, 521 U. S. 320 (1997). Moreover, because petitioner has not argued that Stumpf’s habeas claims were barred as requiring announcement of a new rule, we do not apply the rule of Teague v. Lane, 489 U. S. 288 (1989), to this case. See Schiro v. Farley, 510 U. S. 222, 229 (1994); Godinez v. Moran, 509 U. S. 389, 397, n. 8 (1993).
A
The Court of Appeals concluded that Stumpf’s plea of guilty to aggravated murder was invalid because he was not aware of the specific intent element of the charge — a determination we find unsupportable.
Stumpf’s guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, includ *183 ing the elements of the aggravated murder charge to which he pleaded guilty. A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, “with sufficient awareness of the relevant circumstances and likely consequences.” Brady v. United States, 397 U. S. 742, 748 (1970). Where a defendant pleads guilty to a crime without having been informed of the crime’s elements, this standard is not met and the plea is invalid. Henderson v. Morgan, 426 U. S. 637 (1976).
But the Court of Appeals erred in finding that Stumpf had not been properly informed before pleading guilty. In Stumpf’s plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; Stumpf himself then confirmed that this representation was true. See App. 135, 137-138. While the court taking a defendant’s plea is responsible for ensuring “a record adequate for any review that may be later sought,” Boykin v. Alabama, 395 U. S. 238, 244 (1969) (footnote omitted), we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. Cf. Henderson, supra, at 647 (granting relief to a defendant unaware of the elements of his crime, but distinguishing that case from others where “the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused”). Where a defendant is represented by competent counsel, the court usually may rely on that counsel’s assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.
Seeking to counter this natural inference, Stumpf argues, in essence, that his choice to plead guilty to the aggravated *184 murder charge was so inconsistent with his denial of having shot the victim that he could only have pleaded guilty out of ignorance of the charge’s specific intent requirement. But Stumpf’s asserted inconsistency is illusory. The aggravated murder charge’s intent element did not require any showing that Stumpf had himself shot Mrs. Stout. Rather, Ohio law considers aiders and abettors equally in violation of the aggravated murder statute, so long as the aiding and abetting is done with the specific intent to cause death. See In re Washington, 81 Ohio St. 3d 337, 691 N. E. 2d 285 (1998); State v. Scott, 61 Ohio St. 2d 155, 165, 400 N. E. 2d 375, 382 (1980). As a result, Stumpf’s steadfast assertion that he had not shot Mrs. Stout would not necessarily have precluded him from admitting his specific intent under the statute.
That is particularly so given the other evidence in this case. Stumpf and Wesley had gone to the Stouts’ home together, carrying guns and intending to commit armed robbery. Stumpf, by his own admission, shot Mr. Stout in the head at close range. Taken together, these facts could show that Wesley and Stumpf had together agreed to kill both of the Stouts in order to leave no witnesses to the crime. And that, in turn, could make both men guilty of aggravated murder regardless of who actually killed Mrs. Stout. See ibid.
Stumpf also points to aspects of the plea hearing transcript which he says show that both he and his attorneys were confused about the relevance and timing of defenses Stumpf and his attorneys had planned to make. First, at one point during the hearing, the presiding judge stated that by pleading guilty Stumpf would waive his trial rights and his right to testify in his own behalf. Stumpf’s attorney answered that Stumpf “was going to respond but we have informed him that there is, after the plea, a hearing or trial relative to the underlying facts so that he is of the belief that there will be [a] presentation of evidence.” App. 140. The presiding judge responded that “[o]f course in the sentencing portion of this trial you do have those rights to speak in your own *185 behalf [and] to present evidence and testimony on your own behalf.” Ibid. A few moments later, there was another exchange along similar lines, after the judge asked Stumpf whether he was “in fact guilty of” the aggravated murder charge and its capital specification:
“[DEFENSE COUNSEL]:... Your Honor, the defendant has asked me to explain his answer. His answer is yes. He will recite that with obviously his understanding of his right to present evidence at a later time relative to his conduct, but he’ll respond to that.
“JUDGE HENDERSON: At no time am I implying that the defendant will not have the right to present evidence in [the] mitigation hearing .... And I’m going to ask that the defendant, himself, respond to the question that I asked with that understanding that he has the right to present evidence in mitigation. I’m going to ask the defendant if he is in fact guilty of the charge set forth in Count one, including specification one ... ?
“THE DEFENDANT: Yes, sir.” Id., at 142.
Reviewing this exchange, the Court of Appeals concluded that Stumpf “obviously... was reiterating his desire to challenge the [S]tate’s account of his actions” — that is, to show that he did not intend to kill Mrs. Stout. 367 F. 3d, at 607. But the desire to contest the State’s version of events would not necessarily entail the desire to contest the aggravated murder charge or any of its elements. Rather, Stumpf’s desire to put on evidence “relative to the underlying facts” and “relative to his conduct” could equally have meant that Stumpf was eager to make his mitigation case — an interpretation bolstered by the attorney’s and Stumpf’s approving answers after the presiding judge confirmed that the defense could put on evidence “in mitigation” and in “the sentencing” phase. While Stumpf’s mitigation case was premised on the argument that Stumpf had not shot Mrs. Stout, that was *186 fully consistent with his plea of guilty to aggravated murder. See supra, at 183-184.
Finally, Stumpf, like the Court of Appeals, relies on the perception that he obtained a bad bargain by his plea — that the State’s dropping several nonmurder charges and two of the three capital murder specifications was a bad tradeoff for Stumpf’s guilty plea. But a plea’s validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal. See Brady, 397 U. S., at 757; Mabry v. Johnson, 467 U. S. 504, 508 (1984). Rather, the shortcomings of the deal Stumpf obtained east doubt on the validity of his plea only if they show either that he made the unfavorable plea on the constitutionally defective advice of counsel, see Tollett v. Henderson, 411 U. S. 258, 267 (1973), or that he could not have understood the terms of the bargain he and Ohio agreed to. Though Stumpf did bring an independent claim asserting ineffective assistance of counsel, that claim is not before us in this case. And in evaluating the validity of Stumpf’s plea, we are reluctant to accord much weight to his post hoc reevaluation of the wisdom of the bargain. Stumpf pleaded guilty knowing that the State had copious evidence against him, including the testimony of Mr. Stout; the plea eliminated two of the three capital specifications the State could rely on in seeking the death penalty; and the plea allowed Stumpf to assert his acceptance of responsibility as an argument in mitigation. Under these circumstances, the plea may well have been a knowing, voluntary, and intelligent reaction to a litigation situation that was difficult, to say the least. The Court of Appeals erred in concluding that Stumpf was uninformed about the nature of the charge he pleaded guilty to, and we reverse that portion of the judgment below.
B
The Court of Appeals was also wrong to hold that prosecu-torial inconsistencies between the Stumpf and Wesley cases *187 required voiding Stumpf’s guilty plea. Stumpf’s assertions of inconsistency relate entirely to the prosecutor’s arguments about which of the two men, Wesley or Stumpf, shot Mrs. Stout. For the reasons given above, see supra, at 183-184, the precise identity of the triggerman was immaterial to Stumpf’s conviction for aggravated murder. Moreover, Stumpf has never provided an explanation of how the prosecution’s postplea use of inconsistent arguments could have affected the knowing, voluntary, and intelligent nature of his plea.
The prosecutor’s use of allegedly inconsistent theories may have a more direct effect on Stumpf’s sentence, however, for it is at least arguable that the sentencing panel’s conclusion about Stumpf’s principal role in the offense was material to its sentencing determination. The opinion below leaves some ambiguity as to the overlap between how the lower court resolved Stumpf’s due process challenge to his conviction, and how it resolved Stumpf’s challenge to his sentence. It is not clear whether the Court of Appeals would have concluded that Stumpf was entitled to resentencing had the court not also considered the conviction invalid. Likewise, the parties’ briefing to this Court, and the question on which we granted certiorari, largely focused on the lower court’s determination about Stumpf’s conviction. See, e. g., Pet. for Cert, ii (requesting review of Stumpf’s conviction, not sentence); Reply Brief for Petitioner 3 (challenge to Court of Appeals’ decision is focused on issue of conviction); Brief for Respondent 15, n. 3 (“arguments regarding Stumpf’s death sentence are not before this Court”). In these circumstances, it would be premature for this Court to resolve the merits of Stumpf’s sentencing claim, and we therefore express no opinion on whether the prosecutor’s actions amounted to a due process violation, or whether any such violation would have been prejudicial. The Court of Appeals should have the opportunity to consider, in the first instance, the question of how Eastman’s testimony and the *188 prosecutor’s conduct in the Stumpf and Wesley cases relate to Stumpf’s death sentencé in particular. Accordingly, we vacate the portion of the judgment below relating to Stumpf’s prosecutorial inconsistency claim, and we remand the case for further proceedings consistent with this opinion.

It is so ordered.

 Unless otherwise noted, all citations to Ohio statutes refer to the versions of those statutes in effect in 1984, at the time of the crime and trial.