PER CURIAM.
This case is before the Court on appeal from an order denying Milford Byrd’s successive motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons given below, we affirm the circuit court’s order denying relief.
I. BACKGROUND
Byrd was convicted of first-degree murder and sentenced to death for the 1981 murder of his wife, Debra Byrd. Byrd v. State, 481 So.2d 468, 469 (Fla.1985). We have previously set out the pertinent facts of the murder and trial more fully. See id. at 469-71. We briefly summarize them to provide context for the issues raised here. Byrd, who managed a motel in Tampa, confessed to police that when his wife refused to give him a divorce, he hired two of his motel’s residents — Ronald Sullivan and James Endress — to kill her. On the evening of October 12, 1981, however, all three men participated in the murder, in which Debra Byrd was shot and then strangled to death in the motel office. All three men were charged with first-degree murder. Byrd and Endress were tried separately, and Sullivan testified for the State at both trials. In exchange for his truthful testimony at Byrd’s trial, Sullivan negotiated a plea agreement under which he pleaded guilty to second-degree murder and received a term of probation. Byrd, 481 So.2d at 473. In addition, the State dismissed unrelated charges of grand theft and armed robbery. Id. Byrd was found guilty, and the trial court imposed a death sentence, finding three aggravating factors and one mitigating factor. Id. at 471.
We affirmed Byrd’s conviction and sentence of death in his direct appeal. Id. at 473. We also affirmed the denial of his subsequent motion for postconviction relief, Byrd v. State, 597 So.2d 252, 253 (Fla.1992), and denied his later-filed petition for a writ of habeas corpus. Byrd v. Singletary, 655 So.2d 67, 69 (Fla.1995).
In 2002, Byrd filed a successive motion for postconviction relief, which he amended several times. Byrd alleged that newly discovered evidence established that he was denied a fair trial and sentencing. After holding an evidentiary hearing, the *924 circuit court addressed and denied relief on all of Byrd’s claims.
II. ISSUES
Byrd raises three claims on appeal: (1) he was deprived of due process when the State maintained inconsistent positions regarding Sullivan’s credibility in different proceedings; (2) newly discovered evidence demonstrates that he was deprived of due process when the State either presented false or misleading evidence, or withheld material exculpatory evidence, and he received ineffective assistance of counsel; and (3) the trial court failed independently to weigh the sentencing factors in sentencing him to death.
III. ANALYSIS
For Byrd’s successive motion for postconviction relief to be reviewed on the merits, his claims must meet the requirements of rule 3.851(d). That is, each claim must be based on either (1) facts that were unknown to him or his attorney and “could not have been ascertained by the exercise of due diligence,” or (2) a “fundamental constitutional right” that was not previously established, and which “has been held to apply retroactively.” Fla. R.Crim. P. 3.851(d)(2). Claims of newly discovered evidence must be brought within a year of the date the evidence was or could have been discovered through due diligence. See Glock v. Moore, 776 So.2d 243, 251 (Fla.2001); see also Jimenez v. State, 997 So.2d 1056, 1064 (Fla.2008). With these requirements in mind, we address each of these claims in turn.
A. Inconsistent Positions
On appeal, Byrd argues for the first time that the State violated his constitutional right to due process under Bradshaw v. Stumpf, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), by maintaining inconsistent positions regarding whether codefendant Sullivan was a credible witness at Byrd’s trial and at Sullivan’s own subsequent violation of probation hearing. In Stumpf, the defendant claimed that his right to due process was violated when the State pursued different theories in separate proceedings against him and his code-fendant with regard to who actually shot the victim. Stumpf 545 U.S. at 180-81, 125 S.Ct. 2398. The Court held that any inconsistency regarding the identity of the shooter was “immaterial” to Stumpf s conviction and, with regard to Stumpf s sentence, refused to address “whether the prosecutor’s actions amounted to a due process violation.” Id. at 187, 125 S.Ct. 2398. Clearly, Stumpf did not articulate a new rule of law, and this successive post-conviction claim is therefore barred. See id. at 190, 125 S.Ct. 2398 (Thomas, J., concurring) (“This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories.”).
Further, Byrd’s claim is meritless. Sullivan testified at Byrd’s trial pursuant to a plea deal, implicating himself, Byrd, and codefendant Endress in the murder of Byrd’s wife. Less than a year after Byrd’s trial, however, Sullivan was found to have violated his probation, and the circuit court sentenced him to life for the murder of Byrd’s wife.[1] At the probation violation hearing, Sullivan testified that he did not sell drugs to an undercover officer. On cross-examination, Sullivan agreed that during his direct testimony at Byrd’s trial, he had admitted telling a lie to police when *925 he was first arrested regarding the murder. At trial, however, the prosecutor had pointed out this particular incident to the jury, noting that Sullivan lied on that occasion because he was afraid of the consequences of a murder charge and there was no plea agreement in place. The prosecutor argued that this incident should not otherwise undermine Sullivan’s credibility because once the plea deal was made, Sullivan implicated himself as well as Byrd in the murder. At Sullivan’s violation of probation hearing, the same prosecutor argued that the incident showed that Sullivan would lie to protect himself and was lying at the probation hearing to avoid imposition of a life sentence for the murder. Not only do these facts provide no basis for Byrd’s due-process claim, but the State consistently argued at both proceedings that Sullivan would lie to protect himself.
B. Claims Based on Newly Discovered Evidence
Byrd claims that newly discovered evidence demonstrates that the State deprived him of a fair trial by presenting false or misleading evidence at trial and by suppressing exculpatory or other evidence, and that trial counsel provided ineffective assistance. We review the trial court’s application of the law to the facts of the case de novo. See Preston v. State, 970 So.2d 789, 798 (Fla.2007). Moreover, for a defendant to obtain relief on a claim of newly discovered evidence, the evidence must be of such a nature that it would probably produce an acquittal on retrial. See Jones v. State, 591 So.2d 911, 915 (Fla.1991).
Because Byrd argues that the newly discovered evidence demonstrates that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and that trial counsel provided constitutionally ineffective assistance, we briefly explain the standards applicable to such claims before we begin our review. First, to establish a Brady claim, the defendant must show that he was prejudiced when the State willfully or inadvertently suppressed material, favorable evidence. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). To prove prejudice, the defendant must demonstrate “a reasonable probability that had the suppressed evidence been disclosed, the jury would have reached a different verdict. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Rhodes v. State, 986 So.2d 501, 508 (Fla.2008) (quoting Green v. State, 975 So.2d 1090, 1102 (Fla.2008)); see Strickler, 527 U.S. at 290, 119 S.Ct. 1936 (“[T]he question is whether ‘the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.’ ” (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995))). A Giglio violation is demonstrated when the prosecutor knowingly presented or failed to correct false testimony that was material to the case. Guzman v. State, 868 So.2d 498, 505 (Fla.2003). The evidence is material “if there is any reasonable likelihood” that it “could have affected” the jury’s verdict. Id. at 506 (quoting United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Thus, the “State, as the beneficiary of the Giglio violation, bears the burden to prove that the presentation of false testimony at trial was harmless beyond a reasonable doubt.” Id. Finally, to establish that counsel provided constitutionally ineffective assistance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant first must identify specific acts or omissions of counsel that are “so serious that counsel *926 was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Id. at 687, 104 S.Ct. 2052. The defendant also must establish prejudice by “show[ing] that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. A reasonable probability is a “probability sufficient to undermine confidence in the outcome.” Id.
1. False Testimony Claim
Appellant first claims that the State failed to correct testimony at trial regarding when Sullivan first offered to provide information against Byrd. We agree with the circuit court that the claim is barred. In fact, Byrd admits that he raised 'this claim under Brady and Giglia in his prior postconviction motion and that this Court affirmed the denial of relief. Further, the claim is based on a December 1981 police report that the circuit court found, in ruling on Byrd’s prior postconviction motion, was provided to Byrd’s trial counsel. Finally, because he previously raised a claim of ineffective assistance of counsel regarding use of the document, any such claim here is barred as well.
2. Undisclosed Uncharged Crimes
As previously stated, Sullivan’s negotiated plea deal included the dismissal of a robbery and a grand theft charge. Appellant next contends that the State violated Brady and Giglio by not disclosing that the State dismissed other charges as a part of the plea deal and by presenting false testimony about the terms of the negotiated plea at trial.[2] This contention is largely based on a reference to “burgla-rys [sic]” in the police report mentioned above that was disclosed to Byrd’s trial counsel. To avoid the procedural bar, Byrd argues that testimony by his other codefendant at Byrd’s evidentiary hearing constitutes newly discovered evidence.
Codefendant James Endress did not testify at Byrd’s trial, but he did testify at the evidentiary hearing on Byrd’s successive postconviction motion. At the hearing, Endress’s testimony was consistent with Sullivan’s trial testimony and Byrd’s voluntary confession (which was admitted at Byrd’s trial) that Byrd hired him and Sullivan to commit the murder. Endress also testified in a manner consistent with Sullivan’s trial testimony, that all three men actually participated in the murder. En-dress stated, however, that Sullivan lied at Endress’s trial when he testified that En-dress fired the gun. According to En-dress, it was Sullivan who fired the shots.
Responding to questions by Byrd’s post-conviction counsel about his knowledge of Sullivan’s plea deal, Endress testified in sum that he thought Sullivan was a suspect in some robberies and that someone told Endress that there were about thirteen robberies. Endress testified, however, that he had no knowledge of whether Sullivan committed any robberies. Finally, Endress testified that he did not know much about Sullivan’s plea deal, but “as far as [he] knew,” if there were robbery charges, they were dropped because Sullivan received probation.
We affirm the denial of this claim. First, while Endress’s testimony was new because he previously had not testified, it does not constitute newly discovered evi *927 dence. Endress did not know anything about Sullivan’s plea deal; his testimony was mere conjecture. Accordingly, En-dress’s testimony, combined with the prosecutors’ testimony in both the 1989 post-conviction proceedings and in the more recent proceedings that there were no undisclosed elements of the negotiated plea, fully supports the circuit court’s determination that Byrd produced no evidence, newly discovered or otherwise, and that he did not establish either his Brady or Gig-lio claim.
Because Byrd failed to present any newly discovered evidence of the existence of thirteen undisclosed robbery charges, Byrd’s attendant claim that he could have used such evidence in his defense at trial is baseless. Endress denied knowledge of any robberies that Sullivan committed and denied committing any himself. In addition, to the extent that this claim is based on the previously disclosed December 1981 police report and the armed robbery charge that was dismissed as part of Sullivan’s plea deal, the claim is barred. We have reviewed all of Byrd’s claims based on Endress’s testimony and find that none meet the requirements of newly discovered evidence. Even if we assumed that Byrd met the first prongs of the newly discovered evidence, Giglio, and Brady tests, he could not meet them prejudice requirements.
3. Ineffective Assistance of Counsel
Byrd next argues that his ineffective assistance of counsel claims from his prior motion for postconviction relief must be reconsidered (1) because of the alleged newly discovered exculpatory evidence discussed above, and (2) because his trial counsel was disbarred in 2002. First, as explained above, appellant has not presented any newly discovered exculpatory or impeaching evidence. Second, the fact of counsel’s disbarment some twenty years after the trial in this case does not call into question any of the prior postconviction proceedings on Byrd’s ineffective assistance of counsel claims. Cf. Hitchcock v. State, 991 So.2d 337, 351-52 (Fla.2008) (rejecting defendant’s Brady and Giglio claim that State failed to disclose deficiencies of its hair analyst where two years after trial, analyst’s supervisors gave her poor performance evaluation regarding evidence security procedures). Accordingly, we affirm the circuit court’s denial of this claim.
C. Sentencing Order
In his final issue, Byrd alleges that the trial court failed to independently weigh the aggravating and mitigating circumstances and argues that due process requires that he be resentenced. The evidence showed that the trial judge alone made the findings and wrote the sentencing order. The court’s draft was sent to both parties, and the prosecutor responded by pointing out a scrivener’s error that the court corrected. This claim does not meet either of the requirements of rule 3.851(d). Accordingly, we affirm the denial of relief.
IV. CONCLUSION
Having reviewed all of Byrd’s claims and finding them either to be barred or merit-less, we affirm the circuit court’s order.
It is so ordered.
PARIENTE, LEWIS, CANADY, POLSTON, and LABARGA, JJ., concur.
QUINCE, C.J., recused.
PERRY, J., did not participate.

. In light of the date of these proceedings, neither does Byrd's claim satisfy the newly discovered evidence basis for raising claims in a successive motion. See Fla. R.Crim. P. 3.851(d)(2)(A).

. We note that in his direct appeal, Byrd argued that the State failed to fully disclose to the jury all of the terms of the plea deal by not eliciting testimony about the armed robbeiy charge that was dismissed. We found no error because defense counsel was cognizant of all the terms of the plea agreement and "could have elicited that portion of the agreement on cross examination.” Byrd, 481 So.2d at 473.