NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 23, 2009*
Decided July 1, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 06-2109

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | |
| | No. 04-CR-688 |
| LUIS VAZQUEZ, | |
| *Defendant-Appellant*. | **Harry D. Leinenweber**, *Judge*. |

**O R D E R**

On September 29, 2005, Luis Vazquez was charged along with numerous co-defendants in a twenty-one-count indictment for several offenses related to a drug conspiracy. Vazquez proceeded to trial *pro se* and was convicted of all offenses for which he was charged. Vazquez

---

* After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

now appeals his conviction, which we affirm.

## I. BACKGROUND

Luis Vazquez was the ringleader of a large drug trafficking conspiracy in Waukegan and North Chicago, Illinois. The Federal Bureau of Investigation began investigating this conspiracy in 2004, and it obtained a great deal of evidence against Vazquez and his co-defendants through a series of wiretaps, several of which were "roving." A more extensive investigation ensued, which ultimately led to Vazquez's arrest in August, 2004.

On September 29, 2005, a grand jury returned a twenty-one-count superseding indictment against Vazquez and six of his co-conspirators. Vazquez was named in eleven of these counts, including, *inter alia*, conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846, distribution of 45 kilograms of cocaine in violation of 21 U.S.C. § 841, and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841.

Vazquez elected to represent himself at trial, a decision that the court thoroughly addressed at a hearing. At that hearing, the court informed Vazquez of the charges against him and the mandatory maximum and minimum sentences for each charge. The court then admonished Vazquez at length about the dangers of proceeding *pro se* and questioned Vazquez about his background. When Vazquez indicated that he still wished to represent himself, the court found that he had made a knowing and voluntary decision to waive his right to counsel and proceed *pro se*.

During the seven-day trial, the government presented substantial evidence against Vazquez. Central to this appeal is the testimony of FBI Agent Courtenae Trautmann, who explained the government's investigation and the information it received from the numerous wiretaps. Trautmann testified that the FBI had identified Vazquez as a supplier of cocaine and had subsequently received approval to wiretap Vazquez's phones. She then described how she had identified Vazquez's voice on the tapes, explaining that she spoke to him after his arrest for the purpose of establishing a voice identification.

A jury found Vazquez guilty of all eleven counts for which he was charged. On March 29, 2006, he was sentenced to 300 months' imprisonment.

## II. ANALYSIS

Vazquez appeals his conviction, arguing that (1) Trautmann's description of the court-authorized wiretaps violated his right to due process; (2) the process by which Trautmann identified Vazquez's voice was unreliable and unduly suggestive; and (3) Vazquez's waiver of court-appointed counsel was constitutionally invalid because the district court's warnings

were deficient.[1]  We find no merit in these arguments, which we discuss in turn.

### A. Trautmann's Explanation of the Court-Authorized Wiretaps

While testifying, Trautmann described the FBI's use of court-approved wiretaps. Trautmann noted that investigators had identified Vazquez as a cocaine supplier through a wiretap of co-defendant Juan Jiminez's phone. She then stated that after identifying numerous phones used by Vazquez, they "applied for and received approval to monitor those telephones."  Finally, she testified that they had then used so-called roving wiretaps, which authorized the FBI to monitor any conversation of a specified individual, rather than a certain phone number.  Trautmann stated:

> After going up on the several phones . . . that we had gone up on using regular wiretaps, we were not having a lot of success intercepting Mr. Vazquez because we were kind of always a step behind him, because he would use the phone for a short period of time and then move on to another phone.  So what we were able to show the chief judge is that this technique is one way that individuals involved in criminal activity attempt to avert or thwart law enforcement monitoring.  So based on that we applied for and received a roving authorization.

Vazquez claims the district court erred in allowing this testimony, relying on *United States v. Cunningham*, 462 F.3d 708 (7th Cir. 2006).  Because Vazquez did not object to the testimony during trial, we review for plain error.  *United States v. Gray*, 410 F.3d 338, 345 (7th Cir. 2005).

In *Cunningham*, we reversed a defendant's conviction where the district court allowed the government to engage in extensive questioning regarding the process for receiving authority to wiretap telephones.  462 F.3d at 713-15.  In that case, the government's witness went into extraordinary detail, describing the various levels of government approval that were required before wiretaps could be authorized.  *See id.* at 710-12.  We held that such elaborate testimony was not relevant. *Id.* at 712.  Instead, "[t]he obvious purpose of the evidence was to show the jury there were several senior government attorneys and agents who all believed there was probable cause that the defendants were involved in a drug conspiracy, and, indirectly, that they all believed . . . the defendants were in fact committing drug-related crimes." *Id.* at 713.  Thus, the government had "piled on needless, unfairly prejudicial evidence that may have affected the jury's judgment." *Id.*

---

[1] Vazquez raises several additional arguments, but they are frivolous and do not merit further discussion.

Agent Trautmann's testimony was nowhere near as extensive as the improper testimony in *Cunningham*. Trautmann merely stated that they had obtained approval to tap Vazquez's phones without describing in detail the various levels of approval this process entailed. She described why they had applied for a roving authorization, but with nothing to intimate to the jury that multiple government agents believed there was probable cause. The purpose of this testimony was clearly a legitimate one—to describe to the jury how they came upon Vazquez as a subject of investigation and why they needed the wiretaps to apprehend him. This is in stark contrast to *Cunningham*, where the only plausible motive behind the testimony elicited by the government was a back-door method to convince the jury that the defendant was a drug dealer. *See id.* Thus, the district court did not err in allowing these brief, undetailed comments regarding the wiretap approval procedure.

### B. Trautmann's Voice Identification

As his next basis for appeal, Vazquez argues that Agent Trautmann's testimony identifying Vazquez's voice on the wiretaps violated his right to due process. To succeed on this claim, Vazquez must show that the identification procedure was "'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *United States v. Williams*, 522 F.3d 809, 810 (7th Cir. 2008) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). In analyzing this question, we employ a two-pronged analysis: (1) the defendant must show that the procedure was unduly suggestive; and (2) if it was, we must determine whether the identification was nonetheless reliable. *United States v. Griffin*, 493 F.3d 856, 865 (7th Cir. 2007). It is well established that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Thus, we must examine whether, under the totality of the circumstances, the identification was reliable. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

First, Vazquez claims that Trautmann's identification procedure was unduly suggestive because she knew that Vazquez had been arrested, there was only one witness available for identification, and Trautmann admittedly spoke with Vazquez with the goal of making a voice identification. We disagree. The process by which Trautmann identified Vazquez's voice is common police procedure, and Vazquez has cited no case in which we have held that such a procedure violated a defendant's due process rights. In fact, we recently held that an FBI agent's identification of a defendant's voice on a wiretap did not violate due process, even where the agent knew the defendant would soon be arrested and had spoken with the defendant for the sole purpose of making an identification. *See United States v. Recendiz*, 557 F.3d 511, 527-28 (7th Cir. 2009).

Furthermore, even if the procedure used were unduly suggestive, it was reliable. Trautmann had listened to hundreds of hours of recorded conversations before making the identification. Moreover, her identification was corroborated by other evidence. In one

recorded conversation, Vazquez mentioned his home address and birthday, and the FBI's surveillance linked him to the conversations. Jiminez also corroborated Trautmann's identification during his trial testimony. Trautmann's identification was therefore reliable.

### C. *Vazquez's Waiver of Counsel*

Finally, Vazquez contends that he was deprived of his Sixth Amendment right to the assistance of counsel because the district court failed to explain the Sentencing Guidelines or list the elements of the charges against him while explaining the dangers of proceeding *pro se*. "Every criminal defendant has an absolute right to defend himself if his decision to do so is knowing, intelligent and voluntary." *United States v. Avery*, 208 F.3d 597, 603 (7th Cir. 2000). Before making this decision, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975) (quotations omitted). Because the trial judge is in the best position to assess whether a defendant has knowingly and voluntarily waived his right to counsel, *United States v. Berkowitz*, 927 F.2d 1376, 1383 (7th Cir. 1991), our review is for abuse of discretion, *United States v. Johnson*, 534 F.3d 690, 693-94 (7th Cir. 2008).

Here, it is clear that Vazquez's choice was made with "eyes open." The district judge examined Vazquez's competency to understand the waiver, admonished him at length about the dangers of *pro se* representation, and informed him that he could spend the rest of his life in jail. This is sufficient to inform Vazquez of the gravity of his decision. We have previously held that courts are not required to administer a specified litany of questions or explain the Sentencing Guidelines to a defendant. *United States v. Hill*, 252 F.3d 919, 928 (7th Cir. 2001). In addition, although a court must explain the elements of the charges to a defendant who is pleading guilty, *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005), this rule has never been applied to a waiver of counsel. Thus, the court did not err in failing to explain the Guidelines or the elements of the charges, and Vazquez's waiver was knowing and voluntary.

## III. CONCLUSION

The judgment of the district court is **AFFIRMED**.