CARLTON, J.,
for the Court:
¶ 1. Allen Henderson was indicted by a Rankin County grand jury for the murder of Kayla Polk under Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006) and of child abandonment under Mississippi Code Annotated section 97-5-1 (Rev. 2006), for having left Polk’s nine-month-old child alone in a vehicle with the child’s deceased mother. Henderson later pleaded guilty to child abandonment and to the lesser-included offense of manslaughter. The Rankin County Circuit Court sentenced Henderson to twenty years in the Mississippi Department of Corrections (MDOC) for the manslaughter conviction and to seven years, with five years suspended and two to serve, for the child-abandonment conviction, with both sentences to run consecutively.
¶ 2. Henderson thereafter filed a motion for post-conviction relief (PCR) in the Rankin County Circuit Court, in which he alleged that: (1) his guilty plea to manslaughter was invalid; (2) he received ineffective-assistance of counsel; (3) the trial court failed to advise him that his sentence could be directly appealed; and (4) the trial court failed to grant him a competency hearing. The trial court found that Henderson was not entitled to relief and dismissed Henderson’s PCR motion without an evidentiary hearing. Finding no error, we affirm the trial court’s dismissal.
STANDARD OF REVIEW
¶ 3. The circuit court may summarily dismiss a PCR motion without an evi-dentiary hearing “if ‘it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief.’ ” Staggs v. State, 960 So.2d 563, 565 (¶ 2) (Miss.Ct.App.2007) (quoting Miss. Code Ann. § 99-39-11(2) (Rev.2000)). This Court will affirm the summary dismissal of a PCR motion “if the petitioner has failed to demonstrate a claim procedurally alive substantially showing the denial of a state or federal right.” Flowers v. State, 978 So.2d 1281, 1283 (¶5) (Miss.Ct.App.2008) (citation and quotations omitted).
DISCUSSION
I. Validity of Henderson’s Guilty Plea
¶ 4. Henderson does not challenge his guilty plea to child abandonment. Rather, he contends that he unwillingly pleaded guilty to manslaughter, and he contends that the plea colloquy contained in the record demonstrates as much. Henderson also contends there was no factual basis to support his guilty plea to manslaughter. The record before this Court refutes each contention.
¶ 5. For a guilty plea to be valid it must be entered into “voluntarily, knowingly, and intelligently, ‘with sufficient awareness of the relevant circumstances and likely consequences.’ ” Carroll v. State, 963 So.2d 44, 46 (¶8) (Miss.Ct.App.2007) (quoting Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005)). “To determine whether the plea is voluntarily, knowingly, and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.” Burrough v. State, 9 So.3d 368, 373 (¶ 11) (Miss.2009) (citation omitted).
¶ 6. In assessing the validity of the guilty plea, the trial court must also determine that there is a factual basis for the plea. Id. at 373 (¶ 14) (citing Rule 8.04 (A)(3) of the Uniform Rules of Circuit and County Court). The Supreme Court stated:
*601 The factual-basis component of the rule requires that, “before it may accept the plea, the circuit court have before it ... substantial evidence that the accused did commit the legally defined offense to which he is offering the plea.” Corley v. State, 585 So.2d 765, 767 (Miss.1991). What facts must be shown depends on the crime and its assorted elements. Id. There are numerous ways by which the facts may be found, but what ultimately is required is “there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged.” Id. (citing United States v. Broce, 488 U.S. 568, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).

Id.

¶ 7. According to the plea colloquy, the trial court thoroughly advised Henderson of his rights, the nature and elements of the charge against him, as well as the consequences of his guilty plea. The colloquy shows Henderson expressly indicated to the trial court’s satisfaction that he understood each of the trial court’s advise-ments, and he wished to waive the rights ordinarily due a criminal defendant in a criminal prosecution.
¶ 8. The State provided the following offer of proof when asked by the trial court what the factual basis was for State’s charge of manslaughter against Henderson:
On count one, the Pearl Police Department was notified on the 28th day of July, 2006, by a custodian of a daycare, that he had found a body in a vehicle, which was parked at the daycare. The Pearl Police Department responded, and that body was later identified as Kayla Polk. The Police Department then contacted the Simpson County authorities, as [Polk] resided in Simpson County. In talking with friends of [Polk], authorities were able to determine that on the weekend of her death, that [Polk] had spent time with [Henderson]. Officers then began to search local hotels and determine[d] that [Henderson] and [Polk] had checked into a hotel room in Pearl. [Henderson] was arrested.... [A]n autopsy was performed. Dr. Steven Hayne said that this case was consistent with strangulation. [Henderson] did admit to being with [Polk] and admitted to moving the body, but he denied that he was actually the individual who did in fact strangle and kill [Polk],
¶ 9. Afterwards, the trial court asked both Henderson and his attorney whether they had any disagreement that the State could prove its case for manslaughter. Both replied, “No.”
¶ 10. Because Henderson had entered an Alford plea (see North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)), also known as a “best-interest plea,” to the crime of manslaughter in his plea petition, the trial court queried Henderson as follows:
BY THE COURT: And your lawyer says that you want what’s called a best-interest plea.... And you remember whenever I said as to count one, are you pleading guilty because you believe that based on the evidence the State would present at trial, the probability of conviction is more likely than your acquittal, and you wish to take advantage of the plea bargain offered by the State?
HENDERSON: Yes, sir.
BY THE COURT: And you said yes?
HENDERSON: So you have to plead guilty to accept the plea bargain? Okay, yeah.
BY THE COURT: Now, are you sure you want to do that?
*602 HENDERSON: Yes, sir. That’s what the State has to offer me on a plea bargain.
BY THE COURT: But I just want to make sure that you want to do it.... I think you’re just a little confused. But I want the record to be very clear that nobody is forcing you to do this? HENDERSON: Absolutely not.
BY THE COURT: And if you don’t want to, you don’t have to. You understand that?
HENDERSON: Yes, sir.
BY THE COURT: And you believe (your defense attorney) can try this case?
HENDERSON: Yes, sir.
BY THE COURT: He has tried a bunch in front of me. And if he couldn’t try this one, it would be the first he couldn’t try. So let me see if I can get back to it now. Under count one and the charge of manslaughter, as a lesser included offense of murder, how do you plead, guilty or not guilty?
HENDERSON: Guilty.
¶ 11. The record affirmatively disputes the allegations in Henderson’s PCR motion that he unwillingly pleaded guilty to manslaughter and that no factual basis in support of his guilty plea to manslaughter is present in the record. Accordingly, this issue is without merit.
II. Ineffective Assistance of Counsel
¶ 12. Henderson alleges that there was evidence in the case that Polk died as a result of a “seizure,” and his attorney failed to investigate Polk’s medical history. Specifically, Henderson asserts that no strangulation marks were found on Polk’s neck to substantiate the State’s claim that Polk was strangled, and he contends that “the marks on Polk’s neck confirmed a bruise which indicated that such resulted from a fall rather than being strangled.” Henderson claims that he repeatedly told his attorney that he did not kill Polk and that Polk was alone in the hotel room when she died, and he was only guilty of moving a dead body; but his attorney manipulated him into pleading guilty despite his protestations of innocence.
¶ 13. In addition, Henderson alleges that his attorney should have filed a motion requesting that a psychiatric evaluation be conducted due to the “unusual and erratic behavior” he had exhibited.
¶ 14. In order to demonstrate ineffective assistance of counsel, a movant must satisfy the familiar two-prong test established in Strickland, v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “First, the convicted defendant must show that counsel’s representation fell below an objective standard of reasonableness. Second, the defendant must show there is reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Hannah v. State, 943 So.2d 20, 24 (¶ 6) (Miss.2006) (internal citations omitted).
¶ 15. This being a case that involves a guilty plea, in order to satisfy the second prong, Henderson was required to show that but for his counsel’s error(s): he would not have pleaded guilty; he would have instead insisted on going to trial; and the ultimate outcome would have been different. Id. at (¶ 7).
¶ 16. In his PCR motion, Henderson provided nothing in support of the above-mentioned assertions on this issue. This is not enough to establish a claim that Henderson was subjected to counsel’s ineffectiveness of constitutional dimensions.
¶ 17. A defendant is obligated to provide “more than conclusory allegations *603 on a claim of ineffective assistance of counsel.” Carpenter v. State, 899 So.2d 916, 921 (¶ 23) (Miss.Ct.App.2005). Bare allegations are insufficient to prove ineffective assistance of counsel. Mayhan v. State, 26 So.3d 1072, 1076 (¶ 10) (Miss.Ct.App.2009).
¶ 18. Having failed to demonstrate a viable claim of ineffective assistance of counsel, the trial court did not err in its decision not to grant Henderson an eviden-tiary hearing on this claim. Accordingly, this issue is without merit.
III. Henderson’s Right to a Direct Appeal of His Sentence
¶ 19. Henderson argues that he was denied due process of law by the trial court’s failure to advise him of his right to appeal his sentence directly to the Mississippi Supreme Court. We disagree and recognize that no such right exists under current Mississippi law.
¶ 20. Mississippi Code Annotated section 99-35-101 was amended, effective July 1, 2008, to provide that “where [a] defendant enters a plea of guilty and is sentenced, then no appeal from the trial court to the Supreme Court shall be allowed.” Miss.Code Ann. § 99-35-101 (Supp.2010). Henderson pleaded guilty over a year after this amendment went into effect; thus, the new version of section 99-35-101 applied to his case.
¶ 21. This Court reads this new language in section 99-35-101 as denying both the Mississippi Supreme Court and this Court jurisdiction to hear direct appeals from the trial court involving the merits of a criminal defendant’s guilty plea and/or the validity of a sentence imposed by the trial court based on that guilty plea. Rightly, the trial court did not misinform Henderson. This issue is without merit.
IY. Competency Hearing
¶ 22. Henderson argues that pursuant to Uniform Rule of Circuit and County Court 9.06, the trial court was required to order a mental evaluation and to conduct a competency hearing in this instance.
¶ 23. Rule 9.06 states in part:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
After the examination[,] the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.
“Though geared toward competency to stand trial, Rule 9.06 may be applied to a defendant’s entry of a guilty plea. The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial.” Smith v. State, 831 So.2d 590, 593 (¶ 11) (Miss.Ct.App.2002) (citation and quotation omitted).
¶ 24. As with his ineffeetive-assistance-of-counsel claim, Henderson fails to provide any information in support of his competency claim, other than the bare assertion that he was not competent at the time of the guilty-plea hearing. This is not a sufficient showing that he lacked the competency necessary to enter a plea of guilty. Moreover, the record contradicts Henderson’s assertion.
*604 ¶ 25. According to his plea petition, Henderson stated: “There is nothing wrong with me physically or mentally which might impair my ability to read and understand this petition or ... impair my ability to knowingly, willingly, and voluntarily enter this plea of guilty. I have never been treated for a mental or nervous condition, disease, or disorder.” At the plea hearing, the trial judge specifically asked Henderson if he had ever been treated for any mental disorder or whether he was currently under the influence of any drugs or alcohol. Henderson replied, “No.”
¶ 26. Having failed to present any evidence that the trial court had reasonable grounds to believe that Henderson lacked the requisite competency necessary to enter a valid plea of guilty, the trial court did not err in its decision to dismiss this claim without an evidentiary hearing. Accordingly, this issue is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, PJJ, MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ, CONCUR. RUSSELL, J, NOT PARTICIPATING.